**Robert H. Ford**
Partner
rford@bradley.com
713.576.0356 direct



September 1, 2025

**VIA CM/ECF**

Mr. Lyle W. Cayce, Clerk
U.S. Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130-3408

      RE:   *Janice Hughes Barnes, Individually and as Representative of the Estate of Ashtian Barnes, Deceased; Tommy Duane Barnes v. Roberto Felix, Jr.; County of Harris, Texas*, No. 22-20519

Dear Mr. Cayce:

      As requested by the Court, Appellee Deputy Roberto Felix, Jr.[1] submits this initial letter brief addressing proposed next steps following the Supreme Court's decision in the referenced matter, which is on remand to this Court from the United States Supreme Court. *See Barnes v. Felix*, 605 U.S. __, 145 S. Ct. 1353 (2025).

      The Supreme Court granted certiorari to settle a circuit split on the proper test for analyzing excessive-force claims under the Fourth Amendment. This Court and several other circuits applied the "moment-of-threat" rule to encounters like this one, in which the driver pulls away from a traffic stop. The Supreme Court decided such claims should be judged under the "totality of the circumstances" test. That was the only "new law" announced by the Supreme Court. The Court did not apply its new test to Deputy Felix's use of force, leaving that for "the courts below." *Barnes*, 605 U.S. __, 145 S. Ct. at 1360. Nor did the Court alter its established principles for evaluating qualified-immunity defenses, which permit the judges of this Court to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

      This Court should exercise its discretion to resolve this case on prong two of the qualified immunity analysis. Whatever this Court might decide about the reasonableness of Deputy Felix's use of force under the "totality of the circumstances" test, it cannot say that Deputy Felix violated "clearly established" law as it existed at the time of the traffic stop nine years ago. That is dispositive of this case as to Deputy

---

[1] This brief presents arguments on behalf of Deputy Felix. Harris County, Texas is separately represented and will file a separate brief.

Felix. There is no need for further briefing. This district court's decision should be affirmed on the existing record and briefing.

If this Court decides to address the constitutionality of Deputy Felix's use of force under the "totality of the circumstances" test, then Deputy Felix respectfully requests that full merits briefing be ordered and the case be decided by this Court. The existing record, including the dash-cam footage, is complete and sufficient to decide the issue. No further factual development is necessary to determine that Deputy Felix acted reasonably under the circumstances of this traffic stop.

**I.    Case Background and Prior Proceedings**

This case involves a traffic stop resulting in deadly force when the driver, decedent Ashtian Barnes, disobeyed Deputy Felix's repeated commands to turn off his car and instead attempted to drive away from a lawful traffic stop, posing significant dangers to both Deputy Felix and the public. *See Barnes*, 145 S. Ct. at 1361-63 (Kavanaugh, J., concurring).

On April 28, 2016, Deputy Felix performed a traffic stop on a vehicle with outstanding toll violations. Barnes told Deputy Felix that the car was a rental registered in his girlfriend's name, and that he did not have his license. While speaking, Barnes rummaged through some papers inside the vehicle, prompting Deputy Felix to instruct him repeatedly to stop "digging around." Deputy Felix then informed Barnes that he smelled marijuana and asked if there was anything in the vehicle he should be made aware of. Barnes responded that his ID may be in the trunk and opened the trunk at Deputy Felix's request. Barnes also turned off the ignition. This entire exchange lasted less than two minutes.

The next few seconds are summarized as follows:

> With his righthand resting on his holster, Felix told Barnes to get out of the car. Barnes opened the door but did not exit; instead, he turned the ignition back on. Felix unholstered his gun and, as the car began to move forward, jumped onto its door-sill. He twice shouted, "Don't fucking move." And with no visibility into the car (because his head was above the roof), he fired two quick shots inside. Barnes was hit, but managed to stop the car. Felix then radioed for back-up. By the time it arrived, Barnes was dead. All told, about five seconds elapsed between when the car started moving and when it stopped. And within that period, two seconds passed between the moment Felix stepped on the doorsill and the moment he fired his first shot.

145 S. Ct. at 1356. Applying this Court's "moment of threat" precedent, the district court determined Felix reasonably believed his life was in danger as he clung to the moving vehicle and was justified in using deadly force. *Barnes v. Felix*, 2022 WL

5239297 (S.D. Tex. Sept. 29, 2022). This Court affirmed. *Barnes v. Felix*, 91 F.4th 393 (5th Cir. 2024).

On appeal, the Supreme Court resolved a divergence among the circuits as to the proper approach to analyzing Fourth Amendment excessive force claims. The Supreme Court held that such claims must be evaluated based on the totality of the circumstances; the analysis cannot be limited to the precise moment of threat. The "moment of threat" approach used by the lower courts improperly narrowed the contextual analysis—here, to the two seconds that Felix was on the vehicle's doorsill—and failed to account for the broader context that the totality standard requires. The totality analysis is not bound by time; "[t]he history of the interaction, as well as other past circumstances known to the officer, thus may inform the reasonableness of the use of force." *Barnes*, 145 S. Ct. at 1358.

The Supreme Court directed the "courts below" to apply the totality analysis on remand, considering all relevant facts that preceded the moment of force. The Court declined to assess how the test applies in this case and did not consider the officer-created danger theory. *Id.* at 1360. Instead, the Court "return[ed] everything else to the courts below" for consideration in the first instance. *Id.*

Justice Kavanaugh concurred, joined by three other Justices, to emphasize the dangers of traffic stops for police officers, noting that "[e]ven for routine traffic violations, traffic stops are "fraught with danger to police officers."" *Barnes*, 145 S. Ct. at 1360 (quoting *Michigan v. Long*, 463 U.S. 1032, 1047 (1983)). As Justice Kavanaugh explained, police officers—who are at a "tactical disadvantage" when approaching a stopped vehicle—must assume that drivers are armed, dangerous, and potential flight risks. *Id.* at 1361-62. Further, when a suspect does flee in his vehicle, the suspect "can pose significant dangers to both the officer and the surrounding community." *Id.* at 1362. The officer must then make a split-second decision about how to respond: "There are no easy or risk-free answers. Every feasible option poses some potential danger to the officer, the driver, or the public at large—and often to all three." *Id.* at 1362-63.

II. **The Court should resolve this appeal as to Deputy Felix on prong two of the qualified immunity analysis because his use of force did not violate "clearly established" law at the time of the incident.**

   A. **This Court may resolve the appeal on the second prong of the qualified immunity analysis.**

This appeal presents a question of qualified immunity. An officer is entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby,* 538 U.S. 48, 62-63 (2018). Prong two of the analysis considers whether the right in question was "clearly established" at the time of the

3

alleged violation, such that the officer was put on notice of the unlawfulness of his conduct. *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019). For a right to be clearly established, "existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Wesby,* 538 U.S. at 63. "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted).

This Court is not required to address the first prong of the qualified immunity analysis in every case. Courts enjoy the discretion to address prong two of a qualified immunity claim, first, in lieu of resolving the constitutional violation issue. *Voss v. Goode*, 954 F.3d 234, 238 (5th Cir. 2020) (citing *Pearson*, 555 U.S. at 236). This case, on remand after overruling a decades-old rule of law in this Circuit, is ripe for resolution under prong two. Nothing in the Supreme Court's mandate requires the Court or parties to expend resources on "[u]nnecessary litigation of constitutional issues" on remand, *Pearson*, 555 U.S. at 237, and there is no need to announce a constitutional rule when the case can be decided on other grounds, *id.* at 241.

**B.    The "totality of the circumstances test" applies on remand, but the moment-of-force rule applied when Deputy Felix made the traffic stop, confirming that the law was unclear.**

Under the Supreme Court's mandate, the "totality of the circumstances" rule *must* be applied when evaluating the reasonableness of police force during a traffic stop. 145 S. Ct. at 1358. Given that this new rule was just mandated by the Supreme Court on May 15, 2025, it could not have been "clearly established" in April 2016, when Deputy Felix stopped Barnes. Instead, the "moment of threat" rule was the prevailing, clearly established law when the routine traffic stop occurred.

*Pearson* teaches that "[p]olice officers are entitled to rely on existing lower court cases without facing personal liability for their actions," and when courts are divided on a constitutional question "it is unfair to subject police to money damages for picking the losing side of the controversy." *Pearson*, 555 U.S. at 244-45. Thus, cases decided after the incident at question cannot provide fair notice of a clearly established right "because a reasonable officer is not required to foresee judicial decisions that do not yet exist in instances where the requirements of the Fourth Amendment are far from obvious." *Kisela v. Hughes,* 584 U.S. 100, 107 (2018).

This rule against holding officers to yet-to-be established constitutional rights operates with particular force in the extraordinary circumstances of this case, where the Supreme Court overruled longstanding circuit precedent and remanded the case for application of a new constitutional rule. *See*, *e.g.*, *Caniglia v. Strom*, 569 F. Supp.

4

3d 87, 90-91 (D.R.I. 2021). In *Caniglia*, the Supreme Court reversed the First Circuit's rule that permitted officers to make warrantless searches and seizures in a home when performing their "community caretaking" duties and remanded the case to the courts below. *Id.* (citing *Caniglia v. Strom*, 593 U.S. 194 (2021)). On remand, the court granted summary judgment on the second prong of the qualified immunity analysis, holding that the Supreme Court's reversal confirmed a "lack of clarity" in the law and, therefore, "the law was not clearly established on the community caretaking exception at the time of the alleged constitutional violation . . . ." *Id.* at 91; *see also Emmons v. City of Escondido*, 921 F.3d 1172, 1174-75 & n.1 (9th Cir. 2019) (resolving excessive force case on remand from Supreme Court under the clearly established prong, without deciding if the officer committed a constitutional violation).

The same result should be reached here. Deputy Felix was entitled to rely on this Court's well-established moment-of-force rule when performing his police duties during a traffic stop. The Supreme Court's granting certiorari to address a circuit split on that constitutional rule, overruling Fifth Circuit precedent, and remanding this case for application of a new rule confirms that the law was not clearly established at the time of this traffic stop in 2016.[2] Deputy Felix is entitled to qualified immunity.

### III. Alternatively, if the Court decides to consider the constitutional violation question on remand, it should order full merits briefing.

#### A. The existing record is complete.

Prong one of the qualified immunity analysis considers whether the officer's alleged conduct has violated a federal right. *Cole*, 935 F.3d at 451. If there is no violation, then the officer is entitled to qualified immunity. *Id.* Whether Deputy Felix's conduct violated the Fourth Amendment can be resolved on the existing record, which is fully developed and contains all the evidence material to both prongs of the qualified immunity analysis. No further factual development is needed.

---

[2] Even in circuits that apply the "totality of the circumstances" test, the constitutionality of a use of force is often dependent on the particular facts and circumstances, leading those courts to resolve qualified immunity appeals under the second prong. A recent example is *Surat v. Klamser*, 52 F.4th 1261 (10th Cir. 2022), which held that an officer's takedown maneuver on a suspect resisting arrest was excessive and violated the Fourth Amendment. The Court affirmed summary judgment under the second prong, however, after finding no precedent that would have made it clear to every reasonable officer that the takedown was unreasonable under the particular facts of the case. *Id.* at 1276-80.

5

Specifically, the record includes all material facts, which are supported by dash cam footage of the incident and have been recounted by all three courts to consider the case. Those facts are as follows:

- On or about 2:40 p.m., Deputy Felix heard a radio broadcast from the Houston County Toll Road Authority regarding a vehicle on the Sam Houston Tollway with outstanding toll violations, and at about 2:43 p.m., Deputy Felix located the Toyota Corolla and initiated the traffic stop.

- Barnes was driving the vehicle and when Deputy Felix asked for Barnes' driver's license and proof of insurance, Barnes stated he did not have his driver's license and that he had rented the car under his girlfriend's name.

- Barnes then began rummaging through papers and reaching around the vehicle, so Deputy Felix warned Barnes to stop "digging around" numerous times.

- Deputy Felix also smelled marijuana and asked Barnes if he had anything in the vehicle that Deputy Felix should know about.

- In response, Barnes turned the car off, took the keys out of the ignition, and placed them near the gear shift.

- Barnes stated he might have identifying information in the trunk of his vehicle, so Deputy Felix asked Barnes to open the trunk and exit the vehicle.

- Barnes then took his keys and restarted the vehicle, which led Deputy Felix to draw his firearm and point it at Barnes.

- As Barnes attempts to drive away, Deputy Felix yells "don't fucking move" twice.

- Deputy Felix then steps onto Barnes' car with his weapon drawn in an attempt to stop Barnes from feeling.

- Deputy Felix pushes his gun to Barnes' head as Barnes begins to pull away onto the highway.

- While the car is moving, Deputy Felix fires two shots and within two seconds, the vehicle comes to a full stop, and Deputy Felix yells "shots fired!" into his radio.

*See Barnes*, 145 S. Ct. at 1356; 91 F.4th at 395; 2022 WL 5239297, at *1. These material facts are undisputed, and they permit this Cour to resolve the constitutional-violation issue should it choose to do so.

6

**B.  If the Court considers the constitutional-violation question, it should order a full round of merits briefing.**

Because the record is undisputed and complete, the parties should be ordered to submit briefs on the merits.  A brief on the merits will enable the Court to consider prong one of a qualified-immunity claim anew with the aid of the parties' analyses of the Supreme Court's opinion using the new "totality of the circumstances" test and other relevant authorities that were not considered when this case was initially presented.

Under the "totality of the circumstances" test, a court must judge an officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and this "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).  Thus, the ultimate question "is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Id.* at 397.

## IV.  CONCLUSION

Therefore, the Court should proceed directly to analyzing prong two of a qualified-immunity inquiry, which Deputy Felix respectfully forecasts will necessitate an affirmance of summary judgment because, under the "totality of the circumstances" test, Deputy Felix did not violate clearly established law because the "moment of threat" rule was prevailing when the incident occurred  In the alternative, if the Court prefers to decide this case under prong one of the qualified immunity inquiry, then this Court should order the parties to submit a brief on the merits because the record is undisputed and complete.

Sincerely,

*/s/ Robert H. Ford*

Robert H. Ford

*Counsel for Appellee*
*Deputy Roberto Felix, Jr.*