

Adam Fomby
adam@fombylaw.com

Howard Fomby
howard@fombylaw.com

**440 Louisiana Street, Suite 900**
**Houston, TX 77002**
**P: 281.846.4229**
**F: 888.588.4925**

September 8, 2025

Lyle W. Cayce
United States Fifth Circuit Court of Appeals

### Re: Response to Appellees' Letter Brief in *Barnes v. Felix*, No. 22-20519

In 2016, Officer Felix jumped onto Ashtian Barnes' moving rental car and shot Barnes dead—all over an outstanding toll violation incurred by another driver. No court has ever adjudicated the constitutional question at the heart of this case: whether Felix violated the Fourth Amendment when he used lethal force to apprehend Barnes *over outstanding tolls*. As our initial letter explained, the normal course—which this Court follows in countless cases, and which it should follow here—is to remand this matter to the district court. The district court will then apply the correct constitutional standard to the facts and resolve all outstanding issues.

Appellees' letters confirm remand is appropriate. Officer Felix asks this Court to skip over the constitutional issue and rule for him solely on the clearly established prong of the qualified immunity analysis. But as outlined below, Appellant will present strong arguments on remand that Felix is not entitled to qualified immunity for his egregious actions. The district court should evaluate those arguments in the first instance. In any event, Felix acknowledges that courts have discretion to decide the underlying constitutional question before proceeding to the second step of the qualified immunity analysis. If ever there were a case where it was imperative to decide the underlying constitutional issue, it is this one. The district court should get first crack at that task, which this Court can then review on appeal. Indeed, the precedent on which Felix primarily relies—*Caniglia v. Strom*, 569 F. Supp. 3d 87, 90-91 (D.R.I. 2021)—confirms remand is appropriate. In *Caniglia*, the Supreme Court reversed the First Circuit, which promptly remanded the case *to the district court*. This Court should follow its ordinary practice, which is the same the path the First Circuit took in *Caniglia*, and remand.

For its part, the County has abruptly shifted position. Despite defending Felix's unconstitutional conduct for years, the County now declines to advance any argument that Felix's acted reasonably in killing Barnes. The County's change in position is a telling indication that Felix's conduct was truly indefensible. The County urges this Court to "consider the constitutional question" at the heart of this appeal rather than remanding the case—only to then stress that the record stretches to "3,147 pages." Cnty Ltr. 9. But the size of the record is the reason *why* the Court should not "break out of" its "appellate mold." *Utah v. Su*, 109 F.4th 313, 320 (5th Cir. 2024). The district court should examine the totality of the circumstances first. The County's secondary arguments for why it should not bear municipal liability— which to be clear, the County asks the Court to address only *after* deciding the constitutional question, *see* Cnty Ltr. 9-10—are wrong, have likewise never been examined by any court, and should be evaluated on remand by the district court.

At the least, the Court should not decide this weighty matter by letter brief— as the County and Felix acknowledge. *See* Cnty Ltr. 10; Felix Ltr. 7. If the Court does not remand, the Court should order full briefing and hold oral argument.

**I. The Court Should Not Sidestep The Constitutional Question.**

The County correctly recognizes that it is imperative to decide the constitutional question. *See, e.g.*, Cnty Ltr. 4. In contrast, Felix urges this Court to ignore his unreasonable actions entirely—shooting Barnes dead *over a toll violation*—and rule for him solely on prong two of the qualified immunity analysis, *i.e.*, his argument that Barnes' Fourth Amendment right to remain free from deadly force in a car stop for unpaid tolls was not clearly established at the time of the violation. This Court should decline Felix's invitation to rule for him on qualified immunity—and should remand this case instead—for three reasons.

First, on remand, Appellant will present strong arguments that Felix is not entitled to qualified immunity because no "reasonable" "officer" in Felix's shoes "could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible" to jump onto a moving vehicle and shoot a driver— *over outstanding tolls*. *Taylor v. Riojas*, 592 U.S. 7, 8 (2020) (vacating this Court's grant of qualified immunity); *see Crane v. City of Arlington*, 50 F.4th 453, 467 (5th Cir. 2022) ("When we accept the facts as we must, this case is an obvious one. . . . [The officer] should have known he could not use deadly force on an unarmed man in a parked car."); *Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019) (en banc) ("This case is obvious when we accept the facts as we must."); *Singleton v. Casanova*, No. 22-50327, 2024 WL 2891900, at *14 (5th Cir. June 10, 2024) (similar).

Felix suggests (at 5) that he "was entitled to rely on this Court's well-established moment-of-force rule when performing his police duties during a traffic stop." But Felix does *not* argue that any case applying the moment of the threat doctrine held, in 2016, that an officer could use deadly force to apprehend a driver for a minor offense such as unpaid tolls. Instead, the moment of the threat doctrine provided at most a general legal framework. On remand, Appellant will argue that—even considering the existence of the Court's general legal framework in 2016—no reasonable officer in Felix's position would have thought he could have jumped onto a car and shot the driver *over outstanding tolls*.

Indeed, it is notable that, in the Supreme Court, Felix argued that the moment of the threat doctrine did *not* "shield" an officer "from liability" if the officer jumped in front of or onto a moving vehicle, only to shoot the driver. Respondent's Br. 32, *Barnes v. Felix*, No. 23-1239 (U.S.); *see also id*. at 34 ("The moment-of-threat doctrine does not apply when the officer is the unlawful aggressor."). Instead, in an effort to preserve the judgment before the Supreme Court, Felix attempted to reinvent the facts of what happened in this case—and *argued that Barnes somehow threatened Felix*. To be very clear, Felix is wrong: "[T]he use of lethal force against" Barnes "preceded any real threat to Officer Felix's safety." *Barnes v. Felix*, 91 F.4th 393, 401 (5th Cir. 2024) (Higginbotham, J., concurring). To the extent that Felix might revive that factual argument before this Court, it only highlights the need for the district court to evaluate the totality of the circumstances in the first instance. But for present purposes, Felix can hardly now argue that a reasonable officer in 2016 would have relied on the moment of threat doctrine to shoot an unthreatening driver over outstanding toll violations—when Felix argued that the doctrine *did not* permit that outcome just a few months ago.

Second, the district court decision on which *Felix* primarily relies—*Caniglia v. Strom*, 569 F. Supp. 3d 87, 90-91 (D.R.I. 2021)—underscores that the district court should conduct the qualified immunity analysis in the first instance on remand. In *Caniglia*, the Supreme Court reversed the First Circuit and remanded the case to the First Circuit—which in turn returned the case to the district court. Like the First Circuit, this Court should remand the case to the district court.[1]

---

[1] Notably, *Caniglia* did not involve the kind of "extreme circumstances" present in this case—shooting someone dead over a toll violation—in which no reasonable officer would have thought the officer's actions were lawful. *Taylor*, 592 U.S. at 8. Instead, *Caniglia* involved a highly technical exception to the community caretaking function that had been ill-defined until the Supreme Cout decision in that case. In

Third, as Felix acknowledges (at 4), courts have discretion to decide the constitutional question, before deciding whether the right was clearly established. Doing so is particularly appropriate where, as here, a decision on the first prong of qualified immunity "promotes the development of constitutional precedent." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see Camreta v. Greene*, 563 U.S. 692, 707 (2011) (noting need "to clarify" "legal standards"). Indeed, if Felix is correct that his actions are entitled to immunity because it is unclear whether an officer may shoot someone over unpaid toll violations (to be clear: we think it was obvious Felix could not), it is *imperative* that question be answered.

## II. The District Court Should Decide All Outstanding Issues.

The Court should follow its normal procedure—the same approach the First Circuit adopted in *Caniglia*—and remand. The County and Felix suggest that the Court could instead decide the underlying constitutional issue and the follow-on question of municipal liability by requesting additional briefing. But this Court does not address issues in the first instance for a reason: It is difficult and can lead to mistakes. *Cf. Utah*, 109 F.4th at 320. Remand is particularly appropriate because the record spans several thousand pages, as the County emphasizes. *See* Cnty Ltr. 9. Moreover, when the case reached the Supreme Court, Felix himself attempted to contest what occurred on the side of the Sam Houston Parkway. For example, Felix's Supreme Court merits brief included a highly misleading frame-by-frame analysis of the incident, which required Appellant to include a similar frame-by-frame analysis in her reply. *See* Respondent's Br. 7-10, *Barnes v. Felix*, No. 23-1239 (U.S.); Petitioner's Reply App. 1a-11a. This Court should not put itself in the position of needing to resolve that type of factual debate in the first instance.

The County suggests that—after deciding the constitutional issue—the Court could then decide municipal liability. But the issues regarding municipal liability have never been addressed by the district court. As with the constitutional issue, the Court should not decide municipal liability without the benefit of the lower court's sound analysis. On remand, Appellant will again present strong arguments in favor of finding municipal liability, which the district court should evaluate first.[2]

---

this case, by contrast, Felix shot and killed Barnes over unpaid tolls—something no reasonable officer would think was lawful.

[2] For example, Appellant has strong arguments that use of force policies and Felix's training were obviously deficient, and a reasonable fact finder could find the

## III. Conclusion

This case presents a terrible injustice. Officer Felix shot and killed Ashtian Barnes *over unpaid toll violations*. That was obviously unreasonable—indeed, so much so that the County now declines to defend Felix's egregious actions. The Court should follow its ordinary practice and remand.

Respectfully submitted,

Adam Fomby
State Bar No. 24083006
Howard Fomby
State Bar No. 24069725
440 Louisiana Street Suite 900
Houston, Texas 77079
(281) 846-4229
adam@fombylaw.com

---

municipality was deliberately indifferent. ROA.2783. Police departments specifically train officers to avoid jumping in front of or onto moving vehicles *because* doing so may cause them to unreasonably shoot the driver. *See, e.g.*, Petitioner's Brief 42, *Barnes v. Felix*, No. 23-1239 (U.S.). Felix received no such training, and there was no such policy. The County suggests that anytime municipalities rely on State standards, the municipality is not liable. But that cannot be—otherwise, a State could require clearly deficient training and absolve municipalities of their constitutional obligations. Tellingly, the case the County cites, *Hall v. Robinson*, 618 F. App'x 759, 764 (5th Cir. 2015) (per curiam), is unpublished and does not stand for the categorical rule the County advances. Appellant also has a strong argument that higher-ups ratified Felix's actions, such that those actions reflected official policy. ROA.2783-2784. Moreover, this case comes at summary judgment, when the facts are viewed in the "light most favorable" *to Appellant* and "inferences must be drawn" in her favor. *Crane*, 50 F.4th at 461.

Page 5