No. 22-20519

IN THE

# United States Court of Appeals
# for the Fifth Circuit

JANICE HUGHES BARNES, individually and as representative
of the estate of Ashtian Barnes, deceased; TOMMY DUANE BARNES,

*Plaintiffs-Appellants*,

v.

ROBERTO FELIX, JR.; COUNTY OF HARRIS, TEXAS,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-725

## PETITION FOR PANEL REHEARING

ADAM W. FOMBY
HOWARD R. FOMBY
440 Louisiana Street, Suite 900
Houston, TX 77002
Tel: 281-846-4229
Fax: 888-588-4925
adam@fombylaw.com
hfomby@fombylaw.com

*Counsel for Appellant Janice Hughes
Barnes*

November 3, 2025

## CERTIFICATE OF INTERESTED PERSONS

*Barnes v. Felix*, No. 22-20519 (5th Cir.).  The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Janice Hughes Barnes, Plaintiff-Appellant.

Tommy Duane Barnes, Plaintiff-Appellant, represented pro se

Roberto Felix, Jr., Defendant-Appellee

County of Harris, Texas, Defendant-Appellee

Adam W. Fomby, counsel for Janice Hughes Barnes

Howard R. Fomby, counsel for Janice Hughes Barnes

Fomby Law Firm, counsel for Janice Hughes Barnes

Seth Hopkins, counsel for County of Harris, Texas

County Attorney's Office, counsel for County of Harris, Texas

Robert H. Ford, counsel for Roberto Felix, Jr.

Bradley, Arant, Boult, Cummings LLP, counsel for Roberto Felix, Jr.

Nathaniel A.G. Zelinsky

Katherine Wellington

Matthew S. Dorritie

Rachel E. Record

Neal Kumar Katyal

Ezra P. Louvis

Mackenzie Dulay Austin

Hogan Lovells US LLP

Milbank LLP

Lisa S. Blatt

Charles L. McCloud

Peter S. Jorgensen

Erin M. Sielaff

Hallie Saunders

Brett V. Ries

Garrett M. Wen

Williams & Connolly LLP

Judith Ramsey Saldana

Thompson, Coe, Cousins & Irons, LLP

James Carroll Butt

<u>/s/ Adam W. Fomby</u>
ADAM W. FOMBY

*Counsel of record for Janice Hughes Barnes*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ......................................................... i

TABLE OF AUTHORITIES ................................................................................. iv

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 5

   I.   THE PANEL VIOLATED THE RULE OF PARTY
      PRESENTATION AND MISAPPLIED THE SUMMARY
      JUDGMENT STANDARD ........................................................................ 5

   II.  THE PANEL'S HOLDING CONTRADICTS BINDING
      PRECEDENT ......................................................................................... 12

CONCLUSION ................................................................................................. 16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

APPENDIX

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Raso*,
    183 F.3d 279 (3d Cir. 1999) ................................................................12

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..........................................................................5

*Bagley v. Guillen*,
    90 F.4th 799 (5th Cir. 2024) ........................................................1, 5

*Baker v. Coburn*,
    68 F.4th 240 (5th Cir. 2023) ...........................................................14

*Barnes v. Felix*,
    532 F. Supp. 3d 463 (S.D. Tex. 2021)...............................................12

*Barnes v. Felix*,
    605 U.S. 73 (2025)......................................................................7, 16a

*Barnes v. Felix*,
    91 F.4th 393 (5th Cir. 2024) ......................................4, 7, 11, 13, 16

*Cole v. Carson*,
    935 F.3d 444 (5th Cir. 2019) .............................................................1

*Crane v. City of Arlington*,
    50 F.4th 453 (5th Cir. 2022) ................................................ 4-6, 9, 13

*Edwards v. Oliver*,
    31 F.4th 925 (5th Cir. 2022) ...........................................................14

*Flores v. City of Palacios*,
    381 F.3d 391 (5th Cir. 2004) ..........................................................14

*Graham v. Connor*,
    490 U.S. 386 (1989)......................................................................6, 7

iv

*In Re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*,
143 F.4th 718 (6th Cir. 2025) ................................................................5

*Jefferson v. Lias*,
21 F.4th 74 (3d Cir. 2021) ...................................................................16

*Lombardo v. City of St. Louis, Missouri*,
594 U.S. 464 (2021)..............................................................................10

*Lytle v. Bexar Cnty*,
560 F.3d 404 (5th Cir. 2009) .......................................3, 4, 8, 9, 13, 15

*Mullenix v. Luna*,
577 U.S. 7 (2015) ..................................................................................15

*Plumhoff v. Rickard*,
572 U.S. 765 (2014)...............................................................................15

*RedHawk Holdings Corp. v. Schreiber Tr. of Schreiber Living Tr. -
DTD 2/8/95*,
836 F. App'x 232 (5th Cir. 2020) ..........................................................6

*Scott v. Harris*,
550 U.S. 372 (2007)...................................................................8, 10, 15

*Tennessee v. Garner*,
471 U.S. 1 (1985)...................................................................................14

*Vaughan v. Cox*,
343 F.3d 1323 (11th Cir. 2003) .............................................................8

**INTRODUCTION**

When the Supreme Court remanded this case, the Court asked the parties how to proceed. In response, everyone agreed the Court was not well positioned to decide whether Officer Roberto Felix Jr. acted unreasonably when he shot and killed Ashtian Barnes. Janice Hughes Barnes requested that the Court remand the case and allow the district court to consider the totality of the circumstances in the first instance. *See* Barnes Ltr., ECF 263. The County and Officer Felix argued that the Court could decide that constitutional question but only after receiving additional briefing. *See* Cnty Ltr. ECF 262 at 10; Felix Ltr. ECF 264 at 2.

The Court chose an option no one advocated. Without the benefit of a lower court opinion—or even briefing and argument—the Court decided the merits and concluded that Officer Felix acted reasonably. The *sua sponte* decision sharply departed from the norm of party presentation, made several legal and factual errors, conflicts with binding Circuit and Supreme Court precedent, and has created a massive circuit split. Appellant respectfully requests that the panel grant reconsideration, vacate the judgment, and remand to the district court.

At summary judgment, a Court must view "the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Bagley v. Guillen*, 90 F.4th 799, 802 (5th Cir. 2024) (quotation marks omitted); *see Cole v. Carson*, 935 F.3d 444, 452 (5th Cir. 2019) (en banc) (Higginbotham, J.); *id*.

at 457 (Elrod, J., concurring) (agreeing summary judgment not warranted where "the facts are very much in dispute").

But the Court did not apply that familiar rule. Instead, without so much as giving Appellant the opportunity to explain what facts she disputed and on what basis, the Court declared the "events" to be "undisputed." Op. 11. At minimum, the Court's *sua sponte* decision violated the principals of party presentation that undergird the federal system. The parties, not the Court, determine what issues are in dispute. But the parties never had that chance here.

Even worse, the Court viewed the evidence *in the light most favorable to Felix and the County*—the exact opposite of what it was supposed to do. As a result, the Court made several critical errors regarding disputed questions of fact, all of which were material to the outcome.

Consider the highlights. Contrary to the panel's decision, a reasonable jury could find that Barnes's "car" *would not have* posed a danger to Felix had "Felix remained flatfooted on the pavement." Op. 9. Similarly, and also contrary to the panel's decision, a reasonable jury could find that Barnes did not "pose a deadly threat for others on the road." Op. 9 (quotation marks omitted). Indeed, *Felix*—not Barnes—posed a serious threat to other drivers on the highway. By shooting Barnes, Felix risked incapacitating Barnes and causing his vehicle to crash into nearby traffic.

2

A reasonable jury could further find that, rather than having "only bad options," Felix *had several alternative means* of apprehending Barnes. Op. 10. Nor did Felix do "exactly what he was trained to do." Op 11. Precinct Five's official policy and well-known police standards *prohibit officers shooting at fleeing vehicles* because it is so dangerous. Meanwhile, contrary to the Court's suggestion that Barnes was at fault for not stopping his car, Op. 11, a reasonable jury could find that, as Harris County's own expert explained, Felix shot Barnes so quickly that Barnes had no time to react.

These factual errors alone warrant rehearing. But the practical effects of the panel's decision will reverberate far beyond this appeal. The Court effectively held that an officer may *always* use deadly force against a fleeing driver to neutralize the hypothetical "peril[]" to the public of a "high-speed chase." Op. 10. That conclusion conflicts with binding Circuit precedent. As this Court has conclusively held for more than a decade, a driver "fleeing in a motor vehicle" *does not* "render" the use of deadly force reasonable. *Lytle v. Bexar Cnty*, 560 F.3d 404, 415 (5th Cir. 2009). The panel decision is impossible to square with that prior published precedent, cannot be reconciled with Supreme Court case law, and has produced a massive circuit split.

It is difficult to understate the stakes: If the Court does not revise its decision, it will effectively "declare open season on suspects fleeing in motor vehicles." *Lytle*

3

560 F.3d at 414. Here, a man was tragically shot dead over "*an outstanding toll fee.*" *Barnes v. Felix*, 91 F.4th 393, 401 (5th Cir. 2024) (Higginbotham, J., concurring) (emphasis added). That is deeply unjust. Unless that error is corrected, the panel's decision will exacerbate the already disturbing phenomenon, which Judge Higginbotham has chronicled in this very case, of police killing drivers "for minor" "violations." *Crane v. City of Arlington*, 50 F.4th 453, 458 (5th Cir. 2022) (Higginbotham, J.); *see Barnes*, 91 F.4th at 398-399 (5th Cir. 2024) (Higginbotham, J., concurring).

Finally, there is one glaring sign that this case presented such serious questions of fact and law that it deserved to be remanded for the district court to evaluate the matter in the first instance—not decided *sua sponte* without any briefing. In his concurrence in 2024, Judge Higginbotham emphasized that "totality of the circumstances merits finding that Officer Felix violated Barnes's Fourth Amendment right to be free from excessive force." *Barnes*, 91 F.4th at 401 (Higginbotham, J., concurring). But in 2025, writing for the majority, Judge Higginbotham came *to the exact opposite conclusion*. That the same judge reached such contradictory results *in the same case* demonstrates why this matter deserved the benefit of careful consideration through the normal judicial process—not a rush to judgment.

The Court should grant this petition, vacate its decision, and remand the case.

## ARGUMENT

## I.  THE PANEL VIOLATED THE RULE OF PARTY PRESENTATION AND MISAPPLIED THE SUMMARY JUDGMENT STANDARD.

In deciding this case *sua sponte*, the Court violated basic principles of party presentation.  As a result, the Court misapplied the summary judgment standard and made several important errors regarding disputed material questions of fact.  To correct those clear errors, the Court should grant this petition and remand to the district court.

At this stage, the Court must view the record "in the light most favorable to the non-moving party," *Bagley*, 90 F.4th at 802, and "all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  If there are genuine questions of material fact, the Court should deny summary judgment.  *See Anderson*, 477 U.S. at 255.  When an incident is recorded on video, a Court may disregard the nonmovant's version of events on if the video provides "*so much clarity* that a reasonable jury could not" accept the nonmovant's account.  *Crane*, 50 F.4th at 462 (Higginbotham, J.) (quotation marks omitted, emphasis added).  If the "video evidence is ambiguous," however, the court should deny summary judgment.  *Id*. (quotation marks omitted).

It is also hornbook law that, federal courts "rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *In Re Chrysler Pacifica Fire Recall Prods. Liab. Litig*., 143 F.4th

718, 725 (6th Cir. 2025) (quotation marks omitted). But in this case, the panel did not request briefing from the parties to identify the material disputes of fact under the appropriate legal standard. Instead, the panel decided the merits *sua sponte* based upon novel arguments that have never been raised by any party. As a result, the panel did not even know the "nonmovant's version of the facts," and Appellant never had an opportunity to respond to the Court's analysis. *Crane*, 50 F.4th at 462. This alone was error. *See RedHawk Holdings Corp. v. Schreiber Tr. of Schreiber Living Tr. - DTD 2/8/95*, 836 F. App'x 232, 235 (5th Cir. 2020) (per curiam).

Because the Court did not have briefing from the parties—let alone a lower court opinion thoroughly analyzing the issues—the Court incorrectly viewed the facts in the light most favorable *to Felix and the County*. This resulted in multiple material errors of fact, any one of which is grounds for rehearing.

**1.** *Felix was not in danger before jumping.* Whether force is reasonable depends, among other factors, on "whether the suspect poses an immediate threat to the safety of the officers." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Without any analysis, the Court found no factual dispute that had "Felix remained flatfooted on the pavement, Barnes could have . . . seriously injured Felix with his car." Op. 10. But a reasonable jury could easily find the opposite to be true. When Felix was standing next to the driver's side door, Felix was not in the car's path—and was not in danger until after Felix *jumped onto Barnes' moving*

*vehicle.* *See* EOR 1709-1719 (stills showing Felix lunging toward car); EOR 1886 (expert testimony "that had Felix simply stood still, the vehicle would not have hit him").

Judge Higginbotham explained this in his 2024 concurrence. In his words, it "is plain that the use of lethal force against" Barnes "preceded *any real threat* to Officer Felix's safety—that Barnes's decision to flee was made before Officer Felix stepped on the running board. His flight prompted Officer Felix to jump on the running board and fire within two seconds." *Barnes*, 91 F.4th at 401 (Higginbotham, J., concurring) (emphasis added). This major factual dispute about the danger Felix faced (if any) before jumping onto the car should have precluded summary judgment in 2025.

**2. *Barnes did not pose a danger to others.*** The reasonability of an officer's use of force also turns on the offense a suspect committed and whether the suspect posed an immediate threat to bystanders. *See Graham*, 490 U.S. at 396; *accord Barnes v. Felix*, 605 U.S. 73, 87 (2025) (Kavanaugh, J., concurring). Barnes was— at most—suspected of driving a "rental car with an outstanding toll fee." *Barnes*, 91 F.4th at 401 (Higginbotham, J., concurring). But in its decision, the Court concluded that Felix reasonably used force because Barnes posed the threat of "a perilous high-speed chase during rush hour on Houston's busiest toll road." Op. 10.

This decision boils down to a *per se* legal rule that a fleeing driver—in this

case, someone leaving the scene of a traffic violation, *see* Op. 8—necessarily poses a risk to civilians and deadly force is always warranted. As we explain below, that holding conflicts with binding precedent. *See infra* pp. 12-14.

But that holding also conflicts with the summary judgment standard and the facts of this case: Based on the evidence in the record, a reasonable jury could find that Barnes did not pose an immediate risk to the public. Barnes had been driving safely when Felix pulled him over for a traffic violation, EOR 1089-90, and the mere fact a driver leaves a scene does not mean the driver will start a high-speed chase, EOR 752-753 (testimony of Precinct Five chief).

Indeed, Precinct Five's official use of force policy prohibits firing "at a fleeing vehicle unless" unless they pose an immediate risk to others—*reflecting the fact that fleeing vehicles are not inherently and immediately dangerous to civilians*. EOR 1789; *see* EOR 2551. Similarly, Precinct Five's policy discourages pursuing someone fleeing "a traffic violation" or "misdemeanor"—*because they are not inherently dangerous*. EOR 2553-54.

**3.** ***Felix's actions were incredibly dangerous.*** The reasonability of an officer's actions also turns on whether the officer endangered bystanders. *See Scott v. Harris*, 550 U.S. 372, 380 n.7 (2007); *Lytle*, 560 F.3d at 415; *Vaughan v. Cox*, 343 F.3d 1323, 1333 (11th Cir. 2003). Here, the Court's decision ignored evidence in the record demonstrating the incredibly dangerous nature of Felix's actions.

One of the reasons that officers are trained not to shoot drivers is because that tactic is so dangerous to bystanders. Had Barnes been immediately killed, his moving vehicle could have careened into the highway and caused a major crash. EOR 1881 (expert evidence that shooting drivers causes "the vehicle to crash and injure other officers or innocent bystanders."); EOR 1141 (Felix agreeing that shooting a driver will not "stop the car"). Meanwhile, Felix's stray bullets could have hit innocent bystanders. Again, that is why Precinct Five's official policy is *not* to fire "at a fleeing vehicle unless" "deadly force is *immediately necessary*" to protect officers or civilians from "deadly force." EOR 1789 (emphasis added).

**4. *Felix did not face only bad options*.** The reasonability of an officer's use of force also depends upon whether the officer had a "safer way, given the time, place, and circumstances, to stop the fleeing vehicle." *Lytle*, 560 F.3d at 415; *see Crane*, 50 F.4th at 464. In this case, the Court was wrong to conclude that Felix possessed "only bad options." Op. 10. Based on the evidence in the record, a reasonable jury could conclude that Felix had at least three other safer options

*First*, according to testimony by Precinct Five's Chief Allbritton, the normal protocol is simply to "follow the" fleeing "vehicle until it stops." EOR 752. That course of action does not normally put "the public's safety in danger." *Id*. *Second*, Felix could also have "ask[ed] for backup" to follow Barnes. EOR 753. *Third*, the highway was monitored by cameras, meaning officers could also remotely track

Barnes, without ever pursuing him.  EOR 1887.

**5.  *Felix did not follow training.***  An officer acts unreasonably when his actions violate training and "well-known police guidance."  *Lombardo v. City of St. Louis, Missouri*, 594 U.S. 464, 466-467 (2021) (quotation marks omitted).  Without citing anything in the record, the Court concluded that Felix "did exactly what he was trained to do."  Op. 11.

But once more, a reasonable jury could conclude the opposite.  The Precinct's official policy was *not* to fire "at a fleeing vehicle"—let alone *jump onto a moving car and shoot the driver*.  EOR 1789, 1854.  Meanwhile, there is extremely "well-known police guidance," *Lombardo*, 594 U.S. at 467, against shooting drivers because doing so poses extraordinary danger to bystanders.  EOR 1881.

**6.  *Barnes had no time to react.***  The reasonableness of an officer's use of force also turns on the suspect's actions that contributed to the encounter.  *See Scott*, 550 U.S. at 384 & n.10.  The Court concluded that because "Barnes kept driving" after Felix jumped onto the car, Felix reasonably fired the first shot.  Op. 11.  Similarly, according to the Court, "because Barnes" "did not stop" after the first shot, "Felix acted reasonably in firing a second shot."  Op. 11.

But there is a fatal factual flaw in the Court's analysis:  The Court assumed that there was no material dispute regarding whether Barnes had time to react and stop the car.  That is wrong.  A reasonably juror could find—based on the testimony

of Harris County's own expert—that Felix shot Barnes so quickly *Barnes did not have time to react*. *See* EOR 1583 (explaining that the "average reaction time of an individual driving a motor vehicle is between 1.5 to 2 to 2.3 seconds."); *see Barnes*, 91 F.4th at 401 (Higginbotham, J., concurring) (underscoring that Barnes jumped "on the running board and fire[d] within two seconds").

This particular point was ventilated at oral argument before the Supreme Court in response to a question from Justice Kavanaugh. *See* Oral Arg. Tr. 19, *Barnes v. Felix*, No. 23-1239 (U.S.), https://tinyurl.com/bdfyztua. Appellant additionally noted this fact in her letter to the Court suggesting next steps the Court should take in light of the Supreme Court's decision. *See* Barnes Ltr. ECF 262 at 2. This point deserved to be fully considered, not brushed aside.

   **7.   *A reasonable jury could discredit Felix's testimony.*** The forgoing disputes of fact are rooted in the record. They are not "skepticism" or "allegations." Op. 11 n.41 (quotation marks omitted). Because this Court did not request additional briefing, Appellant never even had the opportunity to present them to the Court. And these facts demonstrate that summary judgment is unwarranted.

But it also bears emphasis that the Court erred in concluding that a reasonable jury would be forced to accept Felix's testimony as true. Op. 11 n.41. At summary judgment, "courts should be cautious" to "ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story—the person

shot dead—is unable to testify." *Abraham v. Raso*, 183 F.3d 279, 294 (3d Cir. 1999) (quotation marks omitted).

In this case, there are good reasons for a jury to take a jaundiced view of Felix's credibility. The district court found that parts of Felix's account were "not depicted in the dash cam" and, if believed, required Barnes to act with "near stuntman proportions." *Barnes v. Felix*, 532 F. Supp. 3d 463, 471 n.3 (S.D. Tex. 2021).

Regardless, "Felix's inconsistent testimony regarding the events leading up to the shooting" was not the sole basis that summary judgment should have been denied in this case. *Id*. at 471. For the reasons just described, a jury could find: (i) that Felix was not in danger until after he jumped onto the car; (ii) that Barnes did not pose a danger to civilians; (iii) that Felix's shooting Barnes posed unreasonable risks to bystanders; (iv) that Felix had other options to apprehend Barnes; (v) that Felix violated his training; and (vi) that Barnes did not have time to react. All of those disputes of fact should have precluded summary judgment.

## II.    THE PANEL'S HOLDING CONTRADICTS BINDING PRECEDNET.

These case specific errors warrant rehearing. But it bears emphasis what the panel's decision means in the bigger picture. If this decision is allowed to stand, as a matter of law in this Circuit, anytime a driver leaves the scene of a "misdemeanor traffic violation"—indeed, any traffic stop for any reason—that driver now poses the

deadly threat of "a perilous high-speed chase," and an officer may use deadly force to stop the driver.  Op. 8, 10.

That holding contradicts precedent from this Court, the Supreme Court, and other circuits.  It will have devastating consequences, greatly exacerbating the all-too common phenomenon of deadly traffic stops.  *See Barnes*, 91 F.4th at 398-399 (Higginbotham, J., concurring); *Crane*, 50 F.4th at 458 (Higginbotham, J.).  Indeed, in this case, a man tragically and entirely unnecessarily lost his life over "an outstanding toll fee."  *Barnes*, 91 F.4th at 401 (Higginbotham, J., concurring).  More such cases will follow unless the panel vacates the decision.

In *Lytle*, this Court held that "a suspect that is fleeing in a motor vehicle is not so inherently dangerous that an officer's use of deadly force is *per se* reasonable."  560 F.3d at 416.  The Court acknowledged the truism that "any suspect fleeing in a motor vehicle poses some threat of harm to the public."  *Id*. at 415.  But the Court stressed that the "real inquiry is whether the fleeing suspect posed *such a threat* that the use of deadly force was justifiable."  *Id*. (emphasis added).

In *Lytle*, the Court held that it was unreasonable for an officer to use deadly force even where a "chase took place at high speeds within a residential area, there were children playing somewhere nearby" but there was no "immediate danger," and the driver had already "collided with another vehicle."  *Id*. at 416.  Simply put,

13

the Court's decision in this case—greenlighting the use of force to stop someone fleeing from a traffic stop over outstanding tolls—is impossible to square with *Lytle.*

Nor does *Lytle* stand alone. This Court has on multiple other occasions repeatedly reaffirmed the principle that an officer may not use deadly force against a driver. *See, e.g.*, *Baker v. Coburn*, 68 F.4th 240, 250 (5th Cir. 2023) (explaining an officer may shoot "a speeding car" only if officer has "cause to believe that the car poses an immediate threat," citing *Lytle*, and denying summary judgment); *Edwards v. Oliver*, 31 F.4th 925, 932 (5th Cir. 2022) (explaining precise threat car posed was "material to the excessive force claim," citing *Lytle*, and denying summary judgment); *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004) (unreasonable to shoot at driver who "did not drive erratically" or pose a threat).

A *per se* rule that officers may use force against fleeing drivers also conflicts with Supreme Court's precedent. Under *Tennessee v. Garner*, 471 U.S. 1, 20 (1985), it is unreasonable to use deadly force simply because *a felon* flees the scene—let alone someone who flees a misdemeanor traffic stop. But the Court's holding here means *Garner* is now inapplicable on roadways.

Nor has the Supreme Court ever applied a *per se* rule permitting deadly force against drivers. Instead, in its car chase cases, the Court has analyzed the specific factors unique to each case that demonstrated why a driver posed a serious threat and why deadly force was warranted. That mode of analysis—sloshing "through"

the "factbound morass"—is incompatible with the Court's per se ruling here. *Barnes*, 605 U.S. at 80 (quotation marks omitted).

For example, in *Scott v. Harris*, the Court analyzed the lengthy "Hollywood-style car chase of the most frightening sort," and underscored that the driver had "posed an actual and imminent threat" to "pedestrians," "civilian motorists, and to the officers." 550 U.S. at 380, 384.

In *Plumhoff v. Rickard*, the Court likewise analyzed a "chase" that "exceeded 100 miles per hour," "lasted over five minutes," and concluded that—based on those facts—the driver "pose[d] a deadly threat for others on the road." 572 U.S. 765, 776-777 (2014); *see also Mullenix v. Luna*, 577 U.S. 7, 18 (2015) (driver was "fleeing arrest, at speeds over 100 miles per hour," "was armed and possibly intoxicated," "had threatened to kill any officer he saw," and was "racing towards" another officer's "position"). That analysis would have been unnecessary if there is a *per se* rule permitting the use of deadly force against a non-compliant driver.

Finally, as the Court detailed in *Lytle*, a "number of" other circuits "have found police officers' shooting of fleeing motorists to be unreasonable." 560 F.3d at 416 (collecting precedent from the Second, Fourth, Sixth, Eighth, Ninth, and Eleventh Circuits). Indeed, the Third Circuit recently found a "robust consensus of cases" across six other circuits—including this Court's decision in *Lytle*— "establishing that" it is unreasonable to shoot "an otherwise non-threatening

individual in engaged in vehicular flight." *Jefferson v. Lias*, 21 F.4th 74, 81-86 (3d Cir. 2021).

But in its decision, the panel held the exact opposite, creating a major circuit split. In his 2024 concurrence, Judge Higginbotham called on the Supreme Court to resolve the "circuit divide" over the moment of the threat doctrine. *Barnes*, 91 F.4th at 401 (Higginbotham, J., concurring). The Supreme Court intervened and corrected this Circuit's erroneous Fourth Amendment jurisprudence. *Barnes*, 605 U.S. at 79. It is deeply unfortunate that—on remand—the Court has once again created a serious circuit conflict "over the application of a doctrine deployed daily across this country." *Barnes*, 91 F.4th at 401 (Higginbotham, J., concurring).

## CONCLUSION

In 2024, Judge Higginbotham found that Officer Felix acted unreasonably. In 2025, writing for the majority, Judge Higginbotham reversed course. That the same judge came to such radically different conclusions demonstrate that this case deserved full judicial process—not a *sua sponte* rush to judgment. The Court should grant this petition, vacate its decision, and remand the case.

November 3, 2025                    Respectfully submitted,


                                   /s/ Adam W. Fomby
                                   ADAM W. FOMBY
                                   HOWARD R. FOMBY
                                   440 Louisiana Street, Suite 900
                                   Houston, TX, 77002
                                   Tel: 281-846-4229
                                   Fax: 888-588-4925
                                   adam@fombylaw.com
                                   hfomby@fombylaw.com


                                   *Counsel for Appellant Janice Hughes Barnes*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 40(d)(3) and Fifth Circuit Loval Rule 40.1.3, I certify that this petition for panel rehearing contains 3,898 words. This Brief also complies with the requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared using Microsoft word 14-point Times New Roman, a proportionally spaced font.

November 3, 2025

/s/ Adam W. Fomby
ADAM W. FOMBY
440 Louisiana Street, Suite 900
Houston, TX, 77002
Tel: 281-846-4229
Fax: 888-588-4925
adam@fombylaw.com

*Counsel for Appellant Janice Hughes Barnes*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 3, 2025, I caused the foregoing to be electronically filed with the Clerk of the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.  Counsel for Appellees in this case are registered CM/ECF users and will be served by the appellate CM/ECF.

I also hereby certify that, that, on November 3, 2025, I also caused the foregoing to be mailed by first class registered mail to appellant Tommy Duane Barnes, 317 Harlem Street, Edna, TX 77957.

November 3, 2025                    /s/ Adam W. Fomby
                                   ADAM W. FOMBY
                                   440 Louisiana Street, Suite 900
                                   Houston, TX, 77002
                                   Tel: 281-846-4229
                                   Fax: 888-588-4925
                                   adam@fombylaw.com


                                   *Counsel for Appellant Janice Hughes*
                                   *Barnes*

**APPENDIX A - OPINION**

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 18, 2025

Lyle W. Cayce
Clerk

————————

No. 22-20519

————————

JANICE HUGHES BARNES, *Individually and as Representative of* THE ESTATE OF ASHTIAN BARNES, *Deceased*; TOMMY DUANE BARNES,

*Plaintiffs—Appellants,*

*versus*

ROBERTO FELIX, JR.; COUNTY OF HARRIS, TEXAS,

*Defendants—Appellees.*

————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-725

————————————————————

## ON REMAND FROM
## THE SUPREME COURT OF THE UNITED STATES

Before ELROD, *Chief Judge*, and HIGGINBOTHAM and SMITH, *Circuit Judges*.

PATRICK E. HIGGINBOTHAM, *Circuit Judge*:

As advances of the genre of the Morse code, with its twenty-six letters and ten numerals, railroads, and flight challenged the social order and perforce its legal regime, today we repair to the horseless carriage with its then unimaginable role in daily life, and as with each of the past challenges to the essential task of policing its usage.

No. 22-20519

From a unanimous Supreme Court came pretextual stops, enabling police officers to stop an automobile upon probable cause that any traffic violation has occurred, even if the stop is in search of another violation.[1] Even before that, the Court, aware of the "inordinate risk confronting an officer as he approaches a person seated in a vehicle," had granted officers the right to order the driver out of the vehicle.[2] The import of these decisions cannot be understated, as traffic stops are among the most common interactions the public has with police.

And while *Mimms*'s common-sense protection enables the officer to distance the driver from weapons or contraband in the vehicle, it also prevents a high-speed car chase. The officer's power to preempt flight by separating the suspect from his vehicle is crucial as "[a] driver who speeds away from a traffic stop can pose significant dangers to both the officer and the surrounding community."[3] It follows that the choice to use deadly force in such a situation is "presumptively reasonable when the officer has reason

---

[1] *Wren v. United States*, 517 U.S. 806, 810, 813 (1996) (holding "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred" and rejecting the argument that "the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved"); *accord Heien v. North Carolina*, 574 U.S. 54, 60 (2014) ("'[O]fficers need only reasonable suspicion—that is, a particularized and objective basis for suspecting the particular person stopped of breaking the law." (quotations and citation omitted)).

[2] *Pennsylvania v. Mimms*, 434 U.S. 106, 110–11 (1977) (per curiam) (holding police officer conducting lawful stop for traffic violation may order driver out of vehicle as a matter of course without violating the Fourth Amendment, even if officer has no reason to suspect foul play from driver at time of the stop); *accord Maryland v. Wilson*, 519 U.S. 408, 410 (1997) (confirming *Mimms* rule applies to passengers as well as drivers).

[3] *Barnes v. Felix*, 605 U.S. 73, 87 (2025) (Kavanaugh, J., concurring).

No. 22-20519

to believe that the suspect poses a threat of serious harm to the officer or to others."[4]

This well-settled precedent dictates the outcome of this excessive-force case. Deputy Roberto Felix fatally shot Ashtian Barnes on the Sam Houston Tollway. Barnes's parents sued Felix and Harris County under 42 U.S.C. § 1983.[5] The district court granted summary judgment on the plaintiffs' excessive- and deadly-force claims against Felix and their *Monell* claims against Harris County.

Bound by this circuit's "moment-of-threat" rule, we affirmed.[6] Under that doctrine, "[t]he excessive force inquiry is confined to whether the [officer] was in danger at the moment of the threat that resulted in the [officer's] shooting," and "any of the officers' actions leading up to the shooting are not relevant."[7] While the Fifth, Second, Fourth, and Eighth Circuits have applied this truncated analysis, the majority of our sister circuits consider the totality of the circumstances in determining the reasonableness of an officer's use of deadly force.[8] A concurring judge on this

---

[4] *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009); *see also Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985) (officer may take a life only if it is necessary to prevent an escape and officer has probable cause to believe the suspect poses a significant risk of physical harm to himself or another).

[5] The plaintiffs also brought claims under the Texas Tort Claims Act but have since abandoned them.

[6] *Barnes v. Felix*, 91 F.4th 393, 397–98 (5th Cir. 2024).

[7] *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014) (alterations in original) (citation omitted); *see also, e.g., Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992) ("[R]egardless of what had transpired up until the shooting itself, [the suspect's] movements gave the officer reason to believe, at that moment, that there was a threat of physical harm.").

[8] *See, e.g., St. Hilaire v. City of Laconia*, 71 F.3d 20, 26 (1st Cir. 1995) ("We first reject defendants' analysis that the police officers' actions need be examined for

No. 22-20519

panel urged the Supreme Court to resolve the circuit split over the application of a doctrine deployed daily across this country.[9]

---

'reasonableness' under the Fourth Amendment only at the moment of the shooting. We believe that view is inconsistent with Supreme Court decisions and with the law of this Circuit."); *Carswell v. Borough of Homestead*, 381 F.3d 235, 243 (3d Cir. 2004) ("All of the events leading up to the pursuit of the suspect are relevant."); *Abraham v. Raso*, 183 F.3d 279, 292 (3d Cir. 1999) (considering the totality of circumstances even in the context of deadly force); *Kirby v. Duva*, 530 F.3d 475, 482 (6th Cir. 2008) ("Where a police officer unreasonably places himself in harm's way, his use of deadly force may be deemed excessive."); *Est. of Starks v. Enyart*, 5 F.3d 230, 234 (7th Cir. 1993) ("If a fleeing felon is converted to a 'threatening' fleeing felon *solely* based on the actions of a police officer, the police should not increase the degree of intrusiveness."); *Vos v. City of Newport Beach*, 892 F.3d 1024, 1034 (9th Cir. 2018) ("While a Fourth Amendment violation cannot be established 'based merely on bad tactics that result in a deadly confrontation that could have been avoided,' the events leading up to the shooting, including the officers['] tactics, are encompassed in the facts and circumstances for the reasonableness analysis." (citations omitted)); *Fogarty v. Gallegos*, 523 F.3d 1147, 1159–60 (10th Cir. 2008) (considering totality of the circumstances leading up to the use of force, including "whether an officer's own 'reckless or deliberate conduct' in connection with the arrest contributed to the need to use the force employed." (citation omitted)); *Ayers v. Harrison*, 650 F. App'x 709, 719 (11th Cir. 2016) ("[The officer's] argument that our precedent precluded [the plaintiff] from advancing an 'officer created danger' theory at trial is both factually and legally incorrect."); *Wardlaw v. Pickett*, 1 F.3d 1297, 1303 (D.C. Cir. 1993) ("[W]hatever the circumstances prompting law enforcement officers to use force, whether it be self-defense, defense of another or resistance to arrest, where, as here, a [F]ourth [A]mendment violation is alleged, the inquiry remains whether the force applied was reasonable."). *But see Salim v. Proulx*, 93 F.3d 86, 92 (2d Cir. 1996) ("[The officer's] actions leading up to the shooting are irrelevant to the objective reasonableness of his conduct at the moment he decided to employ deadly force."); *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005) ("[T]he reasonableness of the officer's actions in creating the dangerous situation is not relevant to the Fourth Amendment analysis; rather, reasonableness is determined based on the information possessed by the officer at the moment that force is employed." (citations omitted)); *Banks v. Hawkins*, 999 F.3d 521, 525–26 (8th Cir. 2021) ("In any event, we evaluate the reasonableness of [the officer's] conduct by looking primarily at the threat present *at the time* he deployed the deadly force." (citation omitted)).

[9] *Barnes*, 91 F.4th at 401 (HIGGINBOTHAM, J., concurring) ("This case should have enjoyed full review of the totality of the circumstances. . . . It is time for this Court to revisit this doctrine, failing that, for the Supreme Court to resolve the circuit divide.").

No. 22-20519

And it did. In a unanimous opinion, the Supreme Court reversed, holding the moment-of-threat rule improperly constrains a court's temporal analysis of whether an officer acted reasonably in using force.[10] The Court found that *Tennessee v. Garner* and its progeny control;[11] any claim "that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard."[12] In doing so, the court must consider the "totality of the circumstances."[13]

Four justices also concurred in a separate writing of JUSTICE KAVANAUGH, in which he emphasized the weight courts should give to a suspect's flight, however innocuous the initial reason for the stop may be.[14] He stressed the dangers inherent in traffic stops, as officers suffer a "tactical disadvantage when approaching an unknown vehicle, with limited visibility and unpredictable threats," and moreover, how the dangers to the public and police "multiply" when a driver flees.[15] "[N]o easy or risk-free answers" present themselves when a driver takes off.[16] Letting the driver go endangers

---

[10] *Barnes*, 605 U.S. at 80 ("[T]he 'totality of the circumstances' inquiry into a use of force has no time limit.").

[11] *Id.* at 80–81; 471 U.S. at 8–9.

[12] *Graham v. Connor*, 490 U.S. 386, 395 (1989).

[13] *Id.* at 396 (quoting *Garner*, 471 U.S. at 8–9).

[14] *Barnes*, 605 U.S. at 84–90 (KAVANAUGH, J., concurring).

[15] *Id.* at 85–86 (quotations and citation omitted).

[16] *Id.* at 87.

No. 22-20519

the surrounding community and creates perverse incentives,[17] degrading the respect due to those who protect and serve. Intervention is even more dangerous, whether by giving chase, shooting out the driver's tires, or jumping onto the vehicle.[18] Thus, "[t]he Fourth Amendment [totality of the circumstances] analysis must also take account of the suspect's attempt 'to evade' the officer by 'flight.'"[19] So here, our analysis of Felix's qualified-immunity defense "must appreciate the extraordinary dangers and risks facing police officers and the community at large" when a "driver has suddenly pulled away."[20]

On remand, and with the power of the moment-of-threat doctrine's temporal strictures lifted away, we review *de novo* whether summary judgment is proper in light of the totality of the circumstances leading to Barnes's death.[21] We AFFIRM.

# I.

To establish a Fourth Amendment violation based on an officer's use of excessive force, plaintiffs "must show: (1) an injury[;] (2) which resulted from the use of force that was clearly excessive to the need[;] and (3) the excessiveness of which was objectively unreasonable."[22] The court considers

---

[17] *Id.* ("If doing nothing in response to a fleeing driver became a known and regular practice among police officers, that would presumably embolden some drivers who otherwise might have thought twice about taking off.").

[18] *Id.* at 87–89.

[19] *Id.* at 87 (quoting *Graham*, 490 U.S. at 396).

[20] *Id.* at 90.

[21] *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018) (citation omitted); Fed. R. Civ. P. 56(a).

[22] *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013) (quotations and citation omitted).

the totality of the circumstances, *i.e.*, "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight."[23] This is no cursory review; the court must "slosh [its] way through the factbound morass of reasonableness," careful to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."[24]

But when an officer invokes qualified immunity, as here, the burden shifts to the plaintiff to first demonstrate (1) the officer violated a constitutional right and (2) "the unlawfulness of [the officer's] conduct was clearly established at the time."[25] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."[26]

## II.

The facts giving rise to the plaintiffs' claims unfolded in under two minutes. On April 28, 2016, Deputy Felix patrolled the Sam Houston Tollway as a traffic-enforcement officer for Harris County. A radio broadcast around 2:40 p.m. alerted him to a Toyota Corolla with outstanding toll violations. Felix located and stopped the Corolla on the left shoulder of the

---

[23] *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020) (citing *Graham*, 490 U.S. at 396).

[24] *Scott v. Harris*, 550 U.S. 372, 383 (2007) (quotations omitted); *Graham*, 490 U.S. at 396 (quotations and citations omitted).

[25] *Dist. of Columbia. v. Wesby*, 583 U.S. 48, 62–63 (2018) (quotations and citation omitted).

[26] *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (quotations and citations omitted).

No. 22-20519

freeway soon thereafter—a reasonable decision given his probable cause to believe a misdemeanor traffic violation had occurred.[27] The dashcam footage shows the Corolla's taillights extinguish while its left blinker remains on, indicating the driver turned the engine off but kept the keys in the ignition.

At 2:43 p.m., Felix exited his vehicle, approached the Corolla, and requested the driver's license and proof of insurance.[28] The driver, Ashtian Barnes, told Felix that he did not have his license and the car was rented in his girlfriend's name. Barnes began to reach around the console and floorboard and rummage through papers.[29] Felix claimed Barnes maintained eye contact with him as he did so, and Barnes stopped after Felix repeatedly told him to "stop digging around." Felix said he smelled marijuana and asked Barnes if there was anything in the car he should know about, and called for backup.[30] Barnes then claimed his identification was in the trunk, and opened

---

[27] TEX. TRANSP. CODE § 370.177(a) ("[T]he operator of a vehicle . . . that is driven or towed through a toll collection facility of a turnpike project shall pay the proper toll. The operator of a vehicle who drives or tows a vehicle through a toll collection facility and does not pay the proper toll commits an offense. An offense under this subsection is a misdemeanor punishable by a fine not to exceed $250."); *see Whren*, 517 U.S. at 810.

[28] TEX. PENAL CODE § 38.02 (officer has a right to request driver's identifying information and proof of insurance); *see also Delaware v. Prouse*, 440 U.S. 648, 658–60 (1979) (officer may permissibly check the driver's license and inspect the automobile's registration and proof of insurance during a lawful traffic stop); *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) ("In the course of effectuating [a temporary detention], a police officer may permissibly examine the driver's license and registration and run a computer check on them to investigate whether the driver has any outstanding warrants and if the vehicle is stolen.").

[29] *See Reese v. Anderson*, 926 F.2d 494, 496, 500–01 (5th Cir. 1991) (refusing to find excessive force where the suspect repeatedly refused to keep hands raised and appeared to be reaching for an object).

[30] The Houston Police Department's investigation of the incident revealed Barnes had a criminal record and a loaded handgun under the driver's seat.

No. 22-20519

it for Felix to retrieve himself. Barnes placed his keys near the gearshift and the blinker turned off.

At 2:45 p.m., exercising his right of self-protection, Felix ordered Barnes to exit the vehicle and placed his right hand on his holster as the door opened.[31] Ignoring Felix's order, Barnes grabbed his keys, started the engine, and began to drive away.[32] Understandably, Felix recognized this conduct as an attempt to flee.[33] Felix said something to the effect of "don't do it."

In that moment, "all that a reasonable police officer could have concluded was that [Barnes] was intent on . . . flight and that, if he [were] allowed to do so, he would . . . pose a deadly threat for others on the road" — the vehicle would enter traffic in the fast-lane of the freeway.[34] Because the very "fact that a suspect flees when suspected of a minor offense could well be indicative of a larger danger," Felix faced a split-second decision between

---

[31] *Mimms*, 434 U.S. at 110–11; *see also United States v. Banuelos-Romero*, 597 F.3d 763, 767 (5th Cir. 2010) (officer conducting traffic stop may investigate further upon reasonable suspicion of additional criminal activity); *United States v. Garcia*, 592 F.2d 259, 260 (5th Cir. 1979) (per curiam) (holding that reasonable suspicion "was supplied by the smell of the marijuana"); *United States v. Conley*, No. 22-30037, 2023 WL 2327457, at *3 (5th Cir. Mar. 2, 2023) (per curiam) (unpublished) (same).

[32] *See Young v. City of Killeen*, 775 F.2d 1349, 1351, 1352–53 (5th Cir. 1985) (upholding the use of deadly force when the suspect refused to exit the vehicle and "reached down to the seat or floorboard of his car" as if to retrieve something).

[33] Felix testified he "already had a perception of maybe something, a weapon or him trying to flee at the same moment."

[34] *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014); *see also Barnes*, 605 U.S. at 86 (KAVANAUGH, J., concurring) ("[W]hen, as in this case, the driver suddenly pulls away in the midst of a stop, the risks multiply. A driver speeding away from a traffic stop could easily endanger bystanders and other drivers.").

No. 22-20519

only bad options.[35] Had Felix remained flatfooted on the pavement, Barnes could have started a perilous high-speed chase during rush hour on Houston's busiest toll road—or, even if he did not speed away, he could have seriously injured Felix with the car.[36] If Felix stepped onto the car, he could at least hang on and command Barnes to stop.[37]

Felix mounted the doorsill with one foot, placing his body partially inside the car. Then, as the vehicle accelerated, Felix stepped on with both feet and yelled, "don't f---ing move!" twice. In the little time Felix had to act, and with the little he knew about Barnes, Felix did not act unreasonably in protecting himself and possibly others.[38] Instead, Felix—having spent

---

[35] *Lange v. California*, 594 U.S. 295, 331 (2021) (ROBERTS, C.J., concurring); *see also Barnes*, 605 U.S. at 86 (KAVANAUGH, J., concurring) ("Fleeing from the traffic stop could suggest that the driver is preparing to commit or has committed a more serious crime—and is attempting to evade detection or arrest."); TEX. PENAL CODE § 38.04 (intentionally fleeing from police officer attempting lawful detainment constitutes an offense). Felix testified he "had nothing on Mr. Barnes, not even a name, so I didn't know who he was, what he was capable of or what he could do. So for him trying to flee in this situation definitely threw up a flag that there was something . . . that needed to be stopped."

[36] *See Barnes*, 605 U.S. at 87–89 (KAVANAUGH, J., concurring) (discussing an officer's potential responses to flight, none of which are "particularly good or safe options").

[37] *See id.*

[38] *See Graham*, 490 U.S. at 396–97 ("[P]olice officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving."); *Thompson v. Mercer*, 762 F.3d 433, 438 (5th Cir. 2014) (stating it was the fleeing driver, and not the officer, "who intentionally placed himself and the public in danger by unlawfully engaging in the reckless, high-speed flight that ultimately produced the [officer's] choice between two evils"); *Davis v. Romer*, 600 F. App'x 926, 930 (5th Cir. 2015) (finding argument that the "officer could have moved away from the car is, unfortunately, a suggestion more reflective of the peace of a judge's chambers than of a dangerous and threatening situation on the street" (cleaned up) (citation omitted)).

No. 22-20519

eleven years on the job with an Advanced Peace Officer license—did exactly what he was trained to do.

As Felix clung to the doorframe of the accelerating car, he withdrew then reinserted his weapon into the passenger compartment toward the driver's seat. Barnes kept driving. Felix shot inside the vehicle, "act[ing] reasonably in using deadly force to end [the] risk [of flight]."[39] And because Barnes still did not stop, Felix acted reasonably in firing a second shot.[40] Felix continued to hold Barnes at gunpoint until backup arrived, and Barnes was pronounced dead at the scene at 2:57 p.m.

Based on the undisputed events depicted in the video and Felix's uncontested sworn testimony, we find, based on the totality of the circumstances, that no genuine dispute of material fact exists as to whether Felix used excessive force in an objectively unreasonable manner at any time in the traffic stop.[41] And because the plaintiffs have failed to satisfy the first

---

[39] *Plumhoff*, 572 U.S. at 777; *see also Young*, 775 F.2d at 1352–53; *Graham*, 490 U.S. at 396–97.

[40] *See Plumhoff*, 572 U.S. at 777 ("It stands to reason that, if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended.").

[41] *See* Fed. R. Civ. P. 56(a). The plaintiffs contend material factual disputes exist regarding Barnes's conduct during the stop. Some allegations cannot be independently verified by the dashcam footage and are supported only by Felix's testimony, which the plaintiffs claim varies "wildly." True, Felix has provided several explanations for his conduct, *i.e.*, fear for his life and the safety of others on the road, along with a suspicion that Barnes's flight indicated a more serious crime prompting his evasion. But these reasons are not mutually exclusive. The plaintiffs "provide no evidence to support their skepticism, and at the summary judgment stage, we require evidence—not absolute proof, but not mere allegations either." *Ontiveros*, 564 F.3d at 383 (quotations and citation omitted). Moreover, our inquiry is one of "objective reasonableness," not subjective intent, viewed from "the perspective of a reasonable officer on the scene." *Id.* at 382; *Graham*, 490 U.S. at 396. We need not venture to divine Felix's thoughts; instead,

No. 22-20519

step of the qualified-immunity analysis—raising a dispute of material fact on whether Barnes's Fourth Amendment right to be free from excessive force was violated—we do not reach whether the violated right was "clearly established" at the time of the incident. Accordingly, the plaintiffs have failed to meet their burden to defeat Felix's invocation of qualified immunity, and Felix is entitled to summary judgment on the excessive- and deadly-force claims against him. And as the plaintiffs have failed to show a constitutional violation, their claims against the county fail. Summary judgment is proper as to all claims against Harris County. For the foregoing reasons, we AFFIRM.

---

we ask whether a reasonable officer under Felix's circumstances would have resorted to deadly force to protect himself and others and to prevent an attempted evasion.

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

September 18, 2025

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW

Regarding:  Fifth Circuit Statement on Petitions for Rehearing
            or Rehearing En Banc

      No. 22-20519    Barnes v. Felix
                      USDC No. 4:18-CV-725

Enclosed is a copy of the court's decision.  The court has entered
judgment under Fed. R. App. P. 36.  (However, the opinion may yet
contain typographical or printing errors which are subject to
correction.)

Fed. R. App. P. 39 through 41, and Fed. R. App. P. 39, 40, and 41
govern costs, rehearings, and mandates.  **Fed. R. App. P. 40 require
you to attach to your petition for panel rehearing or rehearing en
banc an unmarked copy of the court's opinion or order.**  Please
read carefully the Internal Operating Procedures (IOP's) following
Fed. R. App. P. 40 for a discussion of when a rehearing may be
appropriate, the legal standards applied and sanctions which may
be imposed if you make a nonmeritorious petition for rehearing en
banc.

<u>Direct Criminal Appeals</u>.  Fed. R. App. P. 41 provides that a motion
for a stay of mandate under Fed. R. App. P. 41 will not be granted
simply upon request.  The petition must set forth good cause for
a stay or clearly demonstrate that a substantial question will be
presented to the Supreme Court.  Otherwise, this court may deny
the motion and issue the mandate immediately.

<u>Pro Se Cases</u>.  If you were unsuccessful in the district court
and/or on appeal, and are considering filing a petition for
<u>certiorari</u> in the United States Supreme Court, you do not need to
file a motion for stay of mandate under Fed. R. App. P. 41.  The
issuance of the mandate does not affect the time, or your right,
to file with the Supreme Court.

<u>Court Appointed Counsel</u>.  Court appointed counsel is responsible
for filing petition(s) for rehearing(s) (panel and/or en banc) and
writ(s) of certiorari to the U.S. Supreme Court, unless relieved
of your obligation by court order.  If it is your intention to
file a motion to withdraw as counsel, you should notify your client
promptly, **and advise them of the time limits for filing for**
**<u>rehearing and certiorari</u>**.  Additionally, you MUST confirm that
this information was given to your client, within the body of your
motion to withdraw as counsel.

The judgment entered provides that each party bear its own costs on appeal.

                              Sincerely,

                              LYLE W. CAYCE, Clerk

                              By: _____
                              Melissa B. Courseault, Deputy Clerk

Enclosure(s)

Mr. Tommy Duane Barnes
Mr. Michael James Bentley
Mr. James Carroll Butt
Mr. Adam Fomby
Mr. Howard Rene Fomby II
Mr. Robert Henry Ford
Ms. Rachel Susan Fraser
Mr. Seth Barrett Hopkins