No. 22-20519

IN THE

# United States Court of Appeals for the Fifth Circuit

JANICE HUGHES BARNES, individually and as representative
of the estate of Ashtian Barnes, deceased; TOMMY DUANE BARNES,

*Plaintiffs-Appellants*,

v.

ROBERTO FELIX, JR.; COUNTY OF HARRIS, TEXAS,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-725

## PETITION FOR EN BANC REHEARING

ADAM W. FOMBY
HOWARD R. FOMBY
440 Louisiana Street, Suite 900
Houston, TX 77002
Tel: 281-846-4229
Fax: 888-588-4925
adam@fombylaw.com
hfomby@fombylaw.com

*Counsel for Appellant Janice Hughes
Barnes*

November 3, 2025

# CERTIFICATE OF INTERESTED PERSONS

*Barnes v. Felix*, No. 22-20519 (5th Cir.).  The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Janice Hughes Barnes, Plaintiff-Appellant.

Tommy Duane Barnes, Plaintiff-Appellant, represented pro se

Roberto Felix, Jr., Defendant-Appellee

County of Harris, Texas, Defendant-Appellee

Adam W. Fomby, counsel for Janice Hughes Barnes

Howard R. Fomby, counsel for Janice Hughes Barnes

Fomby Law Firm, counsel for Janice Hughes Barnes

Seth Hopkins, counsel for County of Harris, Texas

County Attorney's Office, counsel for County of Harris, Texas

Robert H. Ford, counsel for Roberto Felix, Jr.

Bradley, Arant, Boult, Cummings LLP, counsel for Roberto Felix, Jr.

Nathaniel A.G. Zelinsky

Katherine Wellington

Matthew S. Dorritie

Rachel E. Record

Neal Kumar Katyal

Ezra P. Louvis

Mackenzie Dulay Austin

Hogan Lovells US LLP

Milbank LLP

Lisa S. Blatt

Charles L. McCloud

Peter S. Jorgensen

Erin M. Sielaff

Hallie Saunders

Brett V. Ries

Garrett M. Wen

Williams & Connolly LLP

Judith Ramsey Saldana

Thompson, Coe, Cousins & Irons, LLP

James Carroll Butt

/s/ Adam W. Fomby
ADAM W. FOMBY

*Counsel of record for Janice Hughes Barnes*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................... i

TABLE OF AUTHORITIES ..................................................................... iv

INTRODUCTION AND RULE 40(b) STATEMENT ............................................. 1

STATEMENT OF ISSUE ........................................................................ 5

STATEMENT OF THE CASE .................................................................... 5

    A. Factual Background .................................................................... 5

    B. Procedural History ..................................................................... 6

ARGUMENT ...................................................................................... 10

I.    THE PANEL'S HOLDING CONFLICTS WITH FIFTH CIRCUIT PRECEDENT, DEFIES SUPREME COURT PRECEDENT, AND CREATES A DEEP CIRCUIT SPLIT ............................................................ 11

II.   THE ISSUE IS EXCEPTIONALLY IMPORTANT ..................................... 15

CONCLUSION .................................................................................... 16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

APPENDIX

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Speers*,
  473 F.3d 989 (9th Cir. 2007) ...........................................................4, 15

*Baker v. Coburn*,
  68 F.4th 240 (5th Cir. 2023) ...........................................................4, 12

*Barnes v. Felix*,
  532 F. Supp. 3d 463 (S.D. Tex. 2021) ..............................................2, 5

*Barnes v. Felix*,
  605 U.S. 73 (2025) ...................................................................2, 8, 13

*Barnes v. Felix*,
  91 F.4th 393 (5th Cir. 2024) .........................................1, 2, 5, 7, 10, 16

*Cowan ex rel. Est. of Cooper v. Breen*,
  352 F.3d 756 (2d Cir. 2003) ...........................................................4, 15

*Crane v. City of Arlington*,
  50 F.4th 453 (5th Cir. 2022) ...........................................................5, 16

*Edwards v. Oliver*,
  31 F.4th 925 (5th Cir. 2022) ...........................................................4, 12

*Est. of Starks v. Enyart*,
  5 F.3d 230 (7th Cir. 1993) ..............................................................4, 15

*Flores v. City of Palacios*,
  381 F.3d 391 (5th Cir. 2004) ...........................................................4, 12

*Graham v. Connor*,
  490 U.S. 386 (1989) ............................................................................1

*Jefferson v. Lias*,
  21 F.4th 74 (3d Cir. 2021) ..............................................................4, 14

*Kirby v. Duva*,
  530 F.3d 475 (6th Cir. 2008) ................................................................4

*Lytle v. Bexar Cnty*,
    560 F.3d 404 (5th Cir. 2009) .................................................4, 5, 11, 14

*McCaslin v. Wilkins*,
    183 F.3d 775 (8th Cir. 1999) ...............................................4, 15

*Mullenix v. Luna*,
    577 U.S. 7 (2015) ..................................................................4, 14

*Plumhoff v. Rickard*,
    572 U.S. 765 (2014) ..............................................................4, 14

*Reavis ex rel. Est. of Coale v. Frost*,
    967 F.3d 978 (10th Cir. 2020) ...............................................4, 15

*Scott v. Harris*,
    550 U.S. 372 (2007) ...............................................................4, 13

*Smith v. Cupp*,
    430 F.3d 766 (6th Cir. 2005) .......................................................4

*Tennessee v. Garner*,
    471 U.S. 1 (1985) ..................................................................4, 12

*Vaughan v. Cox*,
    343 F.3d 1323 (11th Cir. 2003) ...............................................4, 15

*Williams v. Strickland*,
    917 F.3d 763 (4th Cir. 2019) .................................................4, 15

## Rules

Fed. R. App. P. 40(b)(2)(A) ...............................................................11

Fed. R. App. P. 40(b)(2)(B) ...............................................................11

Fed. R. App. P. 40(b)(2)(C) ...............................................................11

Fed. R. App. P. 40(b)(2)(D) ...............................................................11

## INTRODUCTION AND RULE 40(b) STATEMENT

This case has been to the Supreme Court and back. In 2016, Officer Roberto Felix, Jr. stopped Barnes for driving a rented car with unpaid tolls on the Sam Houston Tollway. During the stop, Felix ordered Barnes out of the vehicle, and Barnes opened his door. The police car's dashcam video recorded what happened next: Barnes began to drive away. Felix lunged toward the passenger cabin and jumped onto the door sill of Barnes' moving vehicle. Felix then shot Barnes twice in rapid succession—so quickly that Barnes did not have time to react.

Appellant is Barnes' mother. She sued Felix for violating her son's Fourth Amendment right to remain free from unreasonable seizures. Under longstanding Supreme Court precedent, a court should evaluate the reasonableness of an officer's use of force based on "the totality of the circumstances." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quotation marks omitted). But that had long not been the Fourth Amendment standard in this Circuit. Instead, until the Supreme Court intervened in this case, this Court had applied a more restrictive moment of the threat doctrine, under which "the excessive-force inquiry is confined to whether the officers or other persons were in danger *at the moment of the threat* that resulted in the officers' use of deadly force." *Barnes v. Felix*, 91 F.4th 393, 397 (5th Cir. 2024) (*Barnes II*) (quotation marks omitted, emphasis added).

1

In the decision below, the district court applied this Circuit's highly restrictive moment of the threat doctrine. As result, the district court ignored everything that occurred prior to Officer Felix's jumping onto Barnes' moving car, and evaluated only "the two seconds before Felix fired." *Barnes v. Felix*, 532 F. Supp. 3d 463, 471 (S.D. Tex. 2021) (*Barnes I*). Based upon that blinkered analysis, the district court concluded that Felix acted reasonably when he shot Barnes.

In the initial appeal in 2024, Judge Higginbotham authored a decision affirming the district court's decision and applying the moment of the threat doctrine. Judge Higginbotham then took the extraordinary step of concurring in his own majority opinion. He urged the Supreme Court to overturn the moment of the threat doctrine. Judge Higginbotham also specifically emphasized that, had he been able to analyze "the totality of the circumstances," he would have found "Officer Felix violated Barnes' Fourth Amendment right to be free from excessive force." *Barnes II*, 91 F.4th at 401 (Higginbotham, J., concurring).

In a unanimous decision, the Supreme Court answered Judge Higginbotham's call. The Court overturned the moment of the threat doctrine and explained that it "conflict[ed]" with precedent requiring courts "to analyze the totality of the circumstances." *Barnes v. Felix*, 605 U.S. 73, 81 (2025) (*Barnes III*). The Supreme Court then remanded for "the courts below" to "consider the reasonableness of the shooting" under the appropriate totality of the circumstances standard. *Id*. at 84.

2

On remand, the panel requested short letters from the parties about how to proceed. In response, all the parties agreed the Court was not well positioned to decide whether Felix acted unreasonably. But the Court chose an option none of the parties advocated. Without the benefit of a lower court opinion—let alone briefing and argument—the Court decided the merits *sua sponte*.

In another decision by Judge Higginbotham, the panel concluded that Officer Felix *acted reasonably* under the totality of the circumstances because fleeing drivers like Barnes present a risk of "flight" and necessarily "pose a deadly threat for others on the road." Op. 9 (quotation marks omitted); *see also* Op. 10 (finding use of force reasonable because "Barnes could have started a perilous high-speed chase"); Op. 11 (holding that Felix acted "reasonably in using deadly force to end the risk of flight" (brackets and quotation marks omitted)). This conclusion directly contradicted Judge Higginbotham's analysis in his 2024 concurrence.

Appellant has sought panel rehearing because the panel's *sua sponte* decision sharply departed from the basic norm of party presentation and made several legal and factual errors. It is troubling that the panel neither provided Appellant the opportunity to brief the facts under the appropriate legal standard nor the chance to meaningfully respond to the Court's analysis. Instead of deciding the case *sua sponte*, the panel should have remanded the case to the district court for it to evaluate the facts in the first instance.

But if the panel does not grant panel rehearing and remand the case, the en banc Court's intervention is urgently needed. The panel effectively held that anytime a driver flees in a motor vehicle, the driver's flight constitutes a deadly threat as a matter of law and officers may use deadly force against the driver. That conclusion conflicts with binding Circuit precedent,[1] is irreconcilable with Supreme Court case law,[2] and has created a massive circuit split.[3] Indeed, for more than a decade, this Court has conclusively held that a driver "fleeing in a motor vehicle" *does not* "render" the use of deadly force reasonable—the exact opposite of what the panel held in this case. *Lytle*, 560 F.3d at 415.

It is difficult to understate the stakes: If the panel does not remand the case or if the en banc Court does not rehear the decision, it will effectively "declare open season on suspects fleeing in motor vehicles." *Id*. at 414. Here, a man was tragically

---

[1] *See Lytle v. Bexar Cnty*, 560 F.3d 404, 415 (5th Cir. 2009); *Baker v. Coburn*, 68 F.4th 240, 250 (5th Cir. 2023); *Edwards v. Oliver*, 31 F.4th 925, 932 (5th Cir. 2022); *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004).

[2] *See Mullenix v. Luna*, 577 U.S. 7, 18 (2015); *Plumhoff v. Rickard*, 572 U.S. 765, 776-777 (2014); *Scott v. Harris*, 550 U.S. 372, 380, 384 (2007); *Tennessee v. Garner*, 471 U.S. 1, 20 (1985).

[3] *See Cowan ex rel. Est. of Cooper v. Breen*, 352 F.3d 756, 763 (2d Cir. 2003); *Jefferson v. Lias*, 21 F.4th 74, 81-86 (3d Cir. 2021); *Williams v. Strickland*, 917 F.3d 763, 769 (4th Cir. 2019); *Smith v. Cupp*, 430 F.3d 766, 775 (6th Cir. 2005); *Kirby v. Duva*, 530 F.3d 475, 483 (6th Cir. 2008); *Est. of Starks v. Enyart*, 5 F.3d 230, 234 (7th Cir. 1993); *McCaslin v. Wilkins*, 183 F.3d 775, 779 (8th Cir. 1999); *Adams v. Speers*, 473 F.3d 989, 992 (9th Cir. 2007); *Reavis ex rel. Est. of Coale v. Frost*, 967 F.3d 978, 994 (10th Cir. 2020); *Vaughan v. Cox*, 343 F.3d 1323, 1333 (11th Cir. 2003).

shot dead over "*an outstanding toll fee*." *Barnes II*, 91 F.4th at 401 (Higginbotham, J., concurring) (emphasis added). That result is deeply unjust, and the panel's decision will exacerbate the already disturbing phenomenon of police killing drivers "for minor" "violations." *Crane v. City of Arlington*, 50 F.4th 453, 458 (5th Cir. 2022) (Higginbotham, J.); *see Barnes II*, 91 F.4th at 398-399 (5th Cir. 2024) (Higginbotham, J., concurring). Thus, if the panel does not correct its error and remand this case, the Court should grant en banc review.

## STATEMENT OF ISSUE

Whether police may use deadly force to apprehend a driver fleeing a traffic stop because that driver necessarily poses a threat to the public as a matter of law, as the panel held, or whether "fleeing in a motor vehicle" does not "render" the use of deadly force reasonable, as this Court and its sister circuits have previously held, *Lytle*, 560 F.3d at 415.

## STATEMENT OF THE CASE

### A. Factual Background

On April 28, 2016, Ashtian Barnes was driving a car rented by his girlfriend on the Sam Houston Tollway. Unbeknownst to Barnes, the car had outstanding tolls incurred by another driver. Officer Felix initiated a traffic stop regarding the unpaid tolls, and Barnes "pulled over." *Barnes I*, 532 F.Supp.3d at 466. Felix "exited his

vehicle" and approached Barnes' driver side door. *Id*. After engaging with Barnes, Felix ordered him "to step out of the vehicle." *Id*.

The dashcam on Felix's cruiser captured what happened next: The driver door was open. Barnes began to drive away. Felix then jumped *onto Barnes' moving vehicle*, and quickly shot Barnes within "two seconds." *Id*. at 471. Despite being shot, Barnes was able to bring the car to a complete stop. Instead of providing Barnes first aid, "Felix held Barnes at gunpoint" for multiple minutes "while Barnes sat bleeding in the driver's seat." *Id*. at 467.

### B. Procedural History

**1.** Appellant Janice Hughes Barnes is Ashtian Barnes' mother. She brought this lawsuit against Felix for violating her son's Fourth Amendment rights and Harris County for municipal liability.

At summary judgment, the district court ruled for Felix and Harris County. The district court explained that "the Fifth Circuit has developed" a "narrow[]" approach" for evaluating the reasonableness of an officer's use of deadly force. *Id*. at 469. Under this Court's moment of the threat doctrine, a court must "ask whether the officer or another person was in danger *at the moment of the threat* that resulted in the officer's use of deadly force." *Id*. (quotation marks omitted).

The district court concluded that "the moment of the threat" in this case occurred after Felix jumped onto the door sill, "in the two seconds before Felix fired

his first shot." *Id*. at 471.  "In that moment, Felix was still hanging onto the moving vehicle and believed it would run him over."  *Id*.  According to the district court, viewing just those two seconds in isolation, Felix acted reasonably.

**2.**    On appeal, this Court affirmed in an opinion authored by Judge Higginbotham.

The Court reiterated that, under its established doctrine, it could "only ask whether Officer Felix was in danger *at the moment of the threat* that caused him to use deadly force against Barnes."  *Barnes II*, 91 F.4th at 397 (quotation marks omitted).  The Court underscored that "[a]ny of the officers' actions leading up to the shooting are not relevant for the purposes of an excessive force inquiry in this Circuit."  *Id*. (quotation marks omitted).  The Court agreed with the district court "that the moment of threat occurred in the two seconds before Barnes was shot," *after* Felix had jumped onto the moving car.  *Id*. at 397.  And the Court affirmed the holding that—viewing those two seconds in isolation—Felix acted reasonably.  *Id*.

Judge Higginbotham concurred separately from his own majority opinion. Judge Higginbotham underscored that this Circuit's doctrine "counters the Supreme Court's instruction to look to the totality of the circumstances when assessing the reasonableness of an officer's use of deadly force."  *Id*. at 398 (Higginbotham, J., concurring).  He urged the Supreme Court to intervene.  *Id*. at 401.

Judge Higginbotham also emphasized that "the totality of the circumstances merits finding that Officer Felix violated Barnes' Fourth Amendment right to be free from excessive force." *Id*. In his words, "the use of lethal force" against Barnes "preceded *any real threat to Officer Felix's safety*." *Id*. (emphasis added). "Barnes's decision to flee was made before Officer Felix stepped on the running board. His flight prompted Officer Felix to jump on the running board and fire within two seconds," lest Barnes "get away with driving" a "rental car with an outstanding toll fee." *Id*.

**3.** The Supreme Court granted review and reversed this Court in a unanimous decision. The Supreme Court explained that this Circuit's doctrine "constricts the proper inquiry into the 'totality of the circumstances.' " *Barnes III*, 605 U.S. at 79.

The Supreme Court also noted that—had he been able to analyze the totality of the circumstances—"Judge Higginbotham would have found that Felix's shooting of Barnes was unreasonable." *Id*.

The Court then "return[ed]" the case "to the courts below" "for them" "to consider the reasonableness of the shooting" under the appropriate legal standard. *Id*. at 84.

**4.** On remand, the panel "requested simultaneous letter briefs from the parties regarding the next steps that counsel recommend." ECF 215.

In response, all the parties agreed the Court was not well positioned to decide the merits.  Barnes explained that the Court should follow its ordinary course and remand the case to the district court for it to analyze the totality of the circumstances in the first instance.  *See* Barnes Ltr., ECF 263.  Felix argued that the Court should "address the constitutionality of" "Felix's use of force under the 'totality of the circumstances' test" *but only after receiving* "*full merits briefing*."  Felix Ltr., ECF 264 at 2 (emphasis added).  Meanwhile, Harris County likewise urged the Court to request "*additional briefing*" "regarding the reasonableness of the shooting" before deciding that question.  Harris Cty. Ltr., ECF 262 at 10 (emphasis added).

The Court did something that *no one* advocated.  Without the benefit of briefing or oral argument—to say nothing of a lower court decision—the panel analyzed the totality of the circumstances *sua sponte*.

As in 2024, Judge Higginbotham authored the panel's opinion.  But in sharp contrast to 2024, Judge Higginbotham concluded that Felix acted *reasonably*.  According to the panel decision, had Felix not used deadly force against Barnes, "Barnes could have started a perilous high-speed chase."  Op. 10.  In other words, Felix "act[ed] reasonably in using deadly force to end *the risk of flight*."  Op. 11 (quotation marks and alterations omitted, emphasis added).  This directly contradicted Judge Higginbotham's conclusion in his 2024 concurrence.

**5.** In her petition for panel rehearing, filed contemporaneously with this en banc petition, Appellant asks the panel to vacate its decision and remand the case.

As that petition explains, the Court violated basic principles of party presentation and made several egregious errors—in no small part because the Court lacked the benefit of adversarial briefing from the parties.  At bottom, rather than viewing the facts in the light most favorable to the non-movant, the Court viewed the facts most favorable *to Felix and Harris County*, the opposite of what it is supposed to do at summary judgment.

The rehearing petition also highlighted a glaring sign that this case presented serious questions that deserved to be remanded to the district court:  In his concurrence in 2024, Judge Higginbotham emphasized that "totality of the circumstances merits finding that Officer Felix violated Barnes's Fourth Amendment right to be free from excessive force." *Barnes II*, 91 F.4th at 401 (Higginbotham, J., concurring).  But in 2025, writing for the majority, Judge Higginbotham came *to the exact opposite conclusion*.

This contemporaneously filed en banc petition follows.

## ARGUMENT

The Supreme Court intervened to correct this Court's aberrational Fourth Amendment doctrine, only for this Court on remand to deviate from the Court's precedent again and create another circuit split.  The easiest path out of this thicket

is for the panel to vacate the judgment and remand the appeal to the district court. Remanding would comport with this Court's ordinary practice, and it would allow the district court an opportunity to apply the correct legal standard to the facts of this case.

But if the panel does not act, the full Court's intervention is urgently needed. The panel's decision—that a fleeing driver poses the threat of "a perilous high-speed chase," and an officer may use deadly force in response, Op. 8, 10—conflicts with prior published precedent from this Court, the Supreme Court, and sister Circuits. *See* Fed. R. App. P. 40(b)(2)(A)-(C). The issue is also one of "exceptional importance." Fed. R. App. P. 40(b)(2)(D). This Court should not let the panel's aberrational decision stand.

## I.   THE PANEL'S HOLDING CONFLICTS WITH FIFTH CIRCUIT PRECEDENT, DEFIES SUPREME COURT PRECEDENT, AND CREATES A DEEP CIRCUIT SPLIT.

**A.** Start with this Court's precedent. The panel decision conflicts with this Court's prior published decisions, which makes clear that "a suspect that is fleeing in a motor vehicle is not so inherently dangerous that an officer's use of deadly force is *per se* reasonable." *Lytle*, 560 F.3d at 416.

The central case is *Lytle*, in which the Court held that it was unreasonable for an officer to use deadly force when a "chase took place at high speeds within a residential area, there were children playing somewhere nearby" but there was no

"immediate danger." *Id.*   The Court acknowledged the truism that "any suspect fleeing in a motor vehicle poses some threat of harm to the public." *Id.* at 415.  But the Court stressed that "real inquiry is whether the fleeing suspect posed *such a threat* that the use of deadly force was justifiable." *Id.* (emphasis added).  The panel's decision—permitting an officer to use deadly force when a driver seeks to flee—is simply impossible to square with *Lytle*.

Nor does *Lytle* stand alone.  This Court has on several other occasions reaffirmed the principle that an officer may not use deadly force against a fleeing driver.  *See Baker*, 68 F.4th at 249 (explaining an officer may shoot "a speeding car" only if officer has "cause to believe that the car poses an immediate threat," citing *Lytle*, and denying summary judgment); *Edwards*, 31 F.4th at 932 (explaining precise threat car posed was "material to the excessive force claim," citing *Lytle*, and denying summary judgment); *Flores*, 381 F.3d at 399 (unreasonable to shoot at driver who "did not drive erratically" or pose a threat).

**B.**  The panel's *per se* rule that officers may use force against fleeing drivers also conflicts with Supreme Court precedent.

As a threshold matter, the decision conflicts with landmark Fourth Amendment case law.  Under *Tennessee v. Garner*, 471 U.S. 1, 20 (1985), it is unreasonable to use deadly force simply because *a felon* flees the scene—let alone someone who flees *a misdemeanor* traffic stop.  But the Court's holding here means

*Garner*'s prohibition on killing fleeing suspects is now inapplicable on roadways. Instead, in the Fifth Circuit, an officer can now use deadly force against a fleeing driver because the driver poses the risk of flight.

Meanwhile, the Supreme Court has never applied this kind of *per se* rule permitting deadly force against fleeing drivers. Instead, in its car chase cases, the Court has analyzed the specific factors unique to each case that demonstrated why a specific driver posed a serious threat and why deadly force was warranted in that individual case. That mode of analysis—sloshing "through" the "factbound morass"—is incompatible with the Court's ruling here. *Barnes*, 605 U.S. at 80 (quotation marks omitted).

For example, in *Scott v. Harris*, the Court concluded that an officer had acted reasonably in using deadly force to terminate a dangerous car chase. But the Court did not apply a per se rule. Instead, the Court underscored that there is no "easy-to-apply legal test in the Fourth Amendment context." 550 U.S. at 383. The Court stressed that, in every case, it must "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id*. (quotation marks omitted). The Court analyzed the lengthy "Hollywood-style car chase of the most frightening sort," and underscored that the driver in that particular case had "posed

13

an actual and imminent threat" to "pedestrians," "civilian motorists, and to the officers." *Id*. at 380, 384.

In *Plumhoff v. Rickard*, the Court likewise found an officer's use of force to be reasonable in a car "chase" that "exceeded 100 miles per hour," "lasted over five minutes," and concluded that—based on those facts—the driver "pose[d] a deadly threat for others on the road." 572 U.S. at 776-777. That factual analysis—focused on the specific danger the driver posed—would have been unnecessary if there is a *per se* rule permitting the use of deadly force against a non-compliant driver. *See also Mullenix*, 577 U.S. at 18 (driver was "fleeing arrest, at speeds over 100 miles per hour," "was armed and possibly intoxicated," "had threatened to kill any officer he saw," and was "racing towards" another officer's "position").

**C.** The panel decision also creates a sizable circuit split. As the Court already detailed in *Lytle*, a "number of" other circuits "have found police officers' shooting of fleeing motorists to be unreasonable." 560 F.3d at 416. Indeed, two years ago, the Third Circuit outlined the "robust consensus of cases" across the Courts of Appeals—including this Court's decision in *Lytle*—"establishing that" it is unreasonable to shoot "an otherwise non-threatening individual . . . engaged in vehicular flight." *Jefferson*, 21 F.4th at 81-86; *see supra* p. 4, n. 3 (collecting precedent from Second, Third, Fourth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits).

Thus, for example, the Fourth Circuit held in 2019 that an officer violated clearly established law when he shot a fleeing driver but was not "in the car's trajectory." *Williams*, 917 F.3d at 770. The Ninth Circuit has similarly held that an officer acted unreasonably when he shot a driver as a car "rolled backwards away from him." *Adams*, 473 F.3d at 992. And in 2020, the Tenth Circuit explained that the "use of deadly force is clearly unreasonable when (1) the only threat is one posed by reckless driving and (2) the immediacy of the threat to the officer is a disputed fact that a reasonable jury could resolve against the officer." *Frost*, 967 F.3d at 994; *see also, e.g.*, *Vaughan*, 343 F.3d at 1333 (unreasonable to shoot fleeing driver where "reasonable officer would have known that firing into the cabin of a pickup truck, traveling at approximately 80 miles per hour . . . would transform the risk of an accident on the highway into a virtual certainty"); *Smith*, 430 F.3d at 775 (explaining that "officer must have reason to believe that the car presents *an imminent danger*"); *Breen*, 352 F.3d at 763 (finding it unreasonable to shoot driver); *McCaslin*, 183 F.3d at 779 (same); *Enyart*, 5 F.3d at 234 (same).

The panel considered none of this authority—and created a circuit split—in no small part because it decided this consequential case without any briefing.

## II.    THE ISSUE IS EXCEPTIONALLY IMPORTANT.

The issue presented in this appeal is exceptionally important. As a result of the panel decision, anytime a driver leaves the scene of a "misdemeanor traffic

violation"—indeed, any traffic stop for any reason—that driver poses the deadly threat of "a perilous high-speed chase," and an officer may use deadly force to stop the driver.  Op. 8, 10.

That holding will have devastating consequences, greatly exacerbating the all-too common phenomenon of deadly traffic stops.  *See Barnes*, 91 F.4th at 398-399 (Higginbotham, J., concurring); *Crane*, 50 F.4th at 458 (Higginbotham, J.).  In this case, a man tragically and unnecessarily lost his life over "an outstanding toll fee." *Barnes*, 91 F.4th at 401 (Higginbotham, J., concurring).  That result is deeply unjust, and this matter cries out for this Court's review.

## CONCLUSION

The simplest solution is for the panel to grant rehearing and remand this case to the district court.  But if the panel does not grant rehearing, the Court should grant this en banc petition.

November 3, 2025                    Respectfully submitted,


                                   /s/ Adam W. Fomby
                                   ADAM W. FOMBY
                                   HOWARD R. FOMBY
                                   440 Louisiana Street, Suite 900
                                   Houston, TX, 77002
                                   Tel: 281-846-4229
                                   Fax: 888-588-4925
                                   adam@fombylaw.com
                                   hfomby@fombylaw.com


                                   *Counsel for Appellant Janice Hughes Barnes*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 40(d)(3) and Fifth Circuit Loval Rule 40.1.3, I certify that this petition for panel rehearing contains 3,800 words. This Brief also complies with the requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared using Microsoft word 14-point Times New Roman, a proportionally spaced font.

November 3, 2025

/s/ Adam W. Fomby
ADAM W. FOMBY
440 Louisiana Street, Suite 900
Houston, TX, 77002
Tel: 281-846-4229
Fax: 888-588-4925
adam@fombylaw.com

*Counsel for Appellant Janice Hughes Barnes*

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 3, 2025, I caused the foregoing to be electronically filed with the Clerk of the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.  Counsel for Appellees in this case are registered CM/ECF users and will be served by the appellate CM/ECF.

I also hereby certify that, that, on November 3, 2025, I also caused the foregoing to be mailed by first class mail to appellant Tommy Duane Barnes, 317 Harlem Street, Edna, TX 77957.

November 3, 2025                 /s/ Adam W. Fomby
                                ADAM W. FOMBY
                                440 Louisiana Street, Suite 900
                                Houston, TX, 77002
                                Tel: 281-846-4229
                                Fax: 888-588-4925
                                adam@fombylaw.com


                                *Counsel for Appellant Janice Hughes
                                Barnes*

**APPENDIX A - OPINION**

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 18, 2025

Lyle W. Cayce
Clerk

No. 22-20519

Janice Hughes Barnes, *Individually and as Representative of* the Estate of Ashtian Barnes, *Deceased*; Tommy Duane Barnes,

*Plaintiffs—Appellants*,

*versus*

Roberto Felix, Jr.; County of Harris, Texas,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-725

## ON REMAND FROM
## THE SUPREME COURT OF THE UNITED STATES

Before Elrod, *Chief Judge*, and Higginbotham and Smith, *Circuit Judges*.

Patrick E. Higginbotham, *Circuit Judge*:

As advances of the genre of the Morse code, with its twenty-six letters and ten numerals, railroads, and flight challenged the social order and perforce its legal regime, today we repair to the horseless carriage with its then unimaginable role in daily life, and as with each of the past challenges to the essential task of policing its usage.

No. 22-20519

From a unanimous Supreme Court came pretextual stops, enabling police officers to stop an automobile upon probable cause that any traffic violation has occurred, even if the stop is in search of another violation.[1] Even before that, the Court, aware of the "inordinate risk confronting an officer as he approaches a person seated in a vehicle," had granted officers the right to order the driver out of the vehicle.[2] The import of these decisions cannot be understated, as traffic stops are among the most common interactions the public has with police.

And while *Mimms*'s common-sense protection enables the officer to distance the driver from weapons or contraband in the vehicle, it also prevents a high-speed car chase. The officer's power to preempt flight by separating the suspect from his vehicle is crucial as "[a] driver who speeds away from a traffic stop can pose significant dangers to both the officer and the surrounding community."[3] It follows that the choice to use deadly force in such a situation is "presumptively reasonable when the officer has reason

---

[1] *Whren v. United States*, 517 U.S. 806, 810, 813 (1996) (holding "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred" and rejecting the argument that "the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved"); *accord Heien v. North Carolina*, 574 U.S. 54, 60 (2014) ("[O]fficers need only reasonable suspicion—that is, a particularized and objective basis for suspecting the particular person stopped of breaking the law." (quotations and citation omitted)).

[2] *Pennsylvania v. Mimms*, 434 U.S. 106, 110–11 (1977) (per curiam) (holding police officer conducting lawful stop for traffic violation may order driver out of vehicle as a matter of course without violating the Fourth Amendment, even if officer has no reason to suspect foul play from driver at time of the stop); *accord Maryland v. Wilson*, 519 U.S. 408, 410 (1997) (confirming *Mimms* rule applies to passengers as well as drivers).

[3] *Barnes v. Felix*, 605 U.S. 73, 87 (2025) (Kavanaugh, J., concurring).

2

No. 22-20519

to believe that the suspect poses a threat of serious harm to the officer or to others."[4]

This well-settled precedent dictates the outcome of this excessive-force case. Deputy Roberto Felix fatally shot Ashtian Barnes on the Sam Houston Tollway. Barnes's parents sued Felix and Harris County under 42 U.S.C. § 1983.[5] The district court granted summary judgment on the plaintiffs' excessive- and deadly-force claims against Felix and their *Monell* claims against Harris County.

Bound by this circuit's "moment-of-threat" rule, we affirmed.[6] Under that doctrine, "[t]he excessive force inquiry is confined to whether the [officer] was in danger at the moment of the threat that resulted in the [officer's] shooting," and "any of the officers' actions leading up to the shooting are not relevant."[7] While the Fifth, Second, Fourth, and Eighth Circuits have applied this truncated analysis, the majority of our sister circuits consider the totality of the circumstances in determining the reasonableness of an officer's use of deadly force.[8] A concurring judge on this

---

[4] *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009); *see also Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985) (officer may take a life only if it is necessary to prevent an escape and officer has probable cause to believe the suspect poses a significant risk of physical harm to himself or another).

[5] The plaintiffs also brought claims under the Texas Tort Claims Act but have since abandoned them.

[6] *Barnes v. Felix*, 91 F.4th 393, 397–98 (5th Cir. 2024).

[7] *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014) (alterations in original) (citation omitted); *see also, e.g., Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992) ("[R]egardless of what had transpired up until the shooting itself, [the suspect's] movements gave the officer reason to believe, at that moment, that there was a threat of physical harm.").

[8] *See, e.g., St. Hilaire v. City of Laconia*, 71 F.3d 20, 26 (1st Cir. 1995) ("We first reject defendants' analysis that the police officers' actions need be examined for

3

No. 22-20519

panel urged the Supreme Court to resolve the circuit split over the application of a doctrine deployed daily across this country.[9]

---

'reasonableness' under the Fourth Amendment only at the moment of the shooting. We believe that view is inconsistent with Supreme Court decisions and with the law of this Circuit."); *Carswell v. Borough of Homestead*, 381 F.3d 235, 243 (3d Cir. 2004) ("All of the events leading up to the pursuit of the suspect are relevant."); *Abraham v. Raso*, 183 F.3d 279, 292 (3d Cir. 1999) (considering the totality of circumstances even in the context of deadly force); *Kirby v. Duva*, 530 F.3d 475, 482 (6th Cir. 2008) ("Where a police officer unreasonably places himself in harm's way, his use of deadly force may be deemed excessive."); *Est. of Starks v. Enyart*, 5 F.3d 230, 234 (7th Cir. 1993) ("If a fleeing felon is converted to a 'threatening' fleeing felon *solely* based on the actions of a police officer, the police should not increase the degree of intrusiveness."); *Vos v. City of Newport Beach*, 892 F.3d 1024, 1034 (9th Cir. 2018) ("While a Fourth Amendment violation cannot be established 'based merely on bad tactics that result in a deadly confrontation that could have been avoided,' the events leading up to the shooting, including the officers['] tactics, are encompassed in the facts and circumstances for the reasonableness analysis." (citations omitted)); *Fogarty v. Gallegos*, 523 F.3d 1147, 1159–60 (10th Cir. 2008) (considering totality of the circumstances leading up to the use of force, including "whether an officer's own 'reckless or deliberate conduct' in connection with the arrest contributed to the need to use the force employed." (citation omitted)); *Ayers v. Harrison*, 650 F. App'x 709, 719 (11th Cir. 2016) ("[The officer's] argument that our precedent precluded [the plaintiff] from advancing an 'officer created danger' theory at trial is both factually and legally incorrect."); *Wardlaw v. Pickett*, 1 F.3d 1297, 1303 (D.C. Cir. 1993) ("[W]hatever the circumstances prompting law enforcement officers to use force, whether it be self-defense, defense of another or resistance to arrest, where, as here, a [F]ourth [A]mendment violation is alleged, the inquiry remains whether the force applied was reasonable."). *But see Salim v. Proulx*, 93 F.3d 86, 92 (2d Cir. 1996) ("[The officer's] actions leading up to the shooting are irrelevant to the objective reasonableness of his conduct at the moment he decided to employ deadly force."); *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005) ("[T]he reasonableness of the officer's actions in creating the dangerous situation is not relevant to the Fourth Amendment analysis; rather, reasonableness is determined based on the information possessed by the officer at the moment that force is employed." (citations omitted)); *Banks v. Hawkins*, 999 F.3d 521, 525–26 (8th Cir. 2021) ("In any event, we evaluate the reasonableness of [the officer's] conduct by looking primarily at the threat present *at the time* he deployed the deadly force." (citation omitted)).

[9] *Barnes*, 91 F.4th at 401 (HIGGINBOTHAM, J., concurring) ("This case should have enjoyed full review of the totality of the circumstances. . . . It is time for this Court to revisit this doctrine, failing that, for the Supreme Court to resolve the circuit divide.").

No. 22-20519

And it did. In a unanimous opinion, the Supreme Court reversed, holding the moment-of-threat rule improperly constrains a court's temporal analysis of whether an officer acted reasonably in using force.[10] The Court found that *Tennessee v. Garner* and its progeny control;[11] any claim "that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard."[12] In doing so, the court must consider the "totality of the circumstances."[13]

Four justices also concurred in a separate writing of Justice Kavanaugh, in which he emphasized the weight courts should give to a suspect's flight, however innocuous the initial reason for the stop may be.[14] He stressed the dangers inherent in traffic stops, as officers suffer a "tactical disadvantage when approaching an unknown vehicle, with limited visibility and unpredictable threats," and moreover, how the dangers to the public and police "multiply" when a driver flees.[15] "[N]o easy or risk-free answers" present themselves when a driver takes off.[16] Letting the driver go endangers

---

[10] *Barnes*, 605 U.S. at 80 ("[T]he 'totality of the circumstances' inquiry into a use of force has no time limit.").

[11] *Id.* at 80–81; 471 U.S. at 8–9.

[12] *Graham v. Connor*, 490 U.S. 386, 395 (1989).

[13] *Id.* at 396 (quoting *Garner*, 471 U.S. at 8–9).

[14] *Barnes*, 605 U.S. at 84–90 (Kavanaugh, J., concurring).

[15] *Id.* at 85–86 (quotations and citation omitted).

[16] *Id.* at 87.

the surrounding community and creates perverse incentives,[17] degrading the respect due to those who protect and serve. Intervention is even more dangerous, whether by giving chase, shooting out the driver's tires, or jumping onto the vehicle.[18] Thus, "[t]he Fourth Amendment [totality of the circumstances] analysis must also take account of the suspect's attempt 'to evade' the officer by 'flight.'"[19] So here, our analysis of Felix's qualified-immunity defense "must appreciate the extraordinary dangers and risks facing police officers and the community at large" when a "driver has suddenly pulled away."[20]

On remand, and with the power of the moment-of-threat doctrine's temporal strictures lifted away, we review *de novo* whether summary judgment is proper in light of the totality of the circumstances leading to Barnes's death.[21] We AFFIRM.

# I.

To establish a Fourth Amendment violation based on an officer's use of excessive force, plaintiffs "must show: (1) an injury[;] (2) which resulted from the use of force that was clearly excessive to the need[;] and (3) the excessiveness of which was objectively unreasonable."[22] The court considers

---

[17] *Id.* ("If doing nothing in response to a fleeing driver became a known and regular practice among police officers, that would presumably embolden some drivers who otherwise might have thought twice about taking off.").

[18] *Id.* at 87–89.

[19] *Id.* at 87 (quoting *Graham*, 490 U.S. at 396).

[20] *Id.* at 90.

[21] *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018) (citation omitted); Fed. R. Civ. P. 56(a).

[22] *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013) (quotations and citation omitted).

No. 22-20519

the totality of the circumstances, *i.e.*, "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight."[23] This is no cursory review; the court must "slosh [its] way through the factbound morass of reasonableness," careful to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."[24]

But when an officer invokes qualified immunity, as here, the burden shifts to the plaintiff to first demonstrate (1) the officer violated a constitutional right and (2) "the unlawfulness of [the officer's] conduct was clearly established at the time."[25] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."[26]

## II.

The facts giving rise to the plaintiffs' claims unfolded in under two minutes. On April 28, 2016, Deputy Felix patrolled the Sam Houston Tollway as a traffic-enforcement officer for Harris County. A radio broadcast around 2:40 p.m. alerted him to a Toyota Corolla with outstanding toll violations. Felix located and stopped the Corolla on the left shoulder of the

---

[23] *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020) (citing *Graham*, 490 U.S. at 396).

[24] *Scott v. Harris*, 550 U.S. 372, 383 (2007) (quotations omitted); *Graham*, 490 U.S. at 396 (quotations and citations omitted).

[25] *Dist. of Columbia. v. Wesby*, 583 U.S. 48, 62–63 (2018) (quotations and citation omitted).

[26] *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (quotations and citations omitted).

freeway soon thereafter—a reasonable decision given his probable cause to believe a misdemeanor traffic violation had occurred.[27] The dashcam footage shows the Corolla's taillights extinguish while its left blinker remains on, indicating the driver turned the engine off but kept the keys in the ignition.

At 2:43 p.m., Felix exited his vehicle, approached the Corolla, and requested the driver's license and proof of insurance.[28] The driver, Ashtian Barnes, told Felix that he did not have his license and the car was rented in his girlfriend's name. Barnes began to reach around the console and floorboard and rummage through papers.[29] Felix claimed Barnes maintained eye contact with him as he did so, and Barnes stopped after Felix repeatedly told him to "stop digging around." Felix said he smelled marijuana and asked Barnes if there was anything in the car he should know about, and called for backup.[30] Barnes then claimed his identification was in the trunk, and opened

---

[27] Tex. Transp. Code § 370.177(a) ("[T]he operator of a vehicle . . . that is driven or towed through a toll collection facility of a turnpike project shall pay the proper toll. The operator of a vehicle who drives or tows a vehicle through a toll collection facility and does not pay the proper toll commits an offense. An offense under this subsection is a misdemeanor punishable by a fine not to exceed $250."); *see Whren*, 517 U.S. at 810.

[28] Tex. Penal Code § 38.02 (officer has a right to request driver's identifying information and proof of insurance); *see also Delaware v. Prouse*, 440 U.S. 648, 658–60 (1979) (officer may permissibly check the driver's license and inspect the automobile's registration and proof of insurance during a lawful traffic stop); *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) ("In the course of effectuating [a temporary detention], a police officer may permissibly examine the driver's license and registration and run a computer check on them to investigate whether the driver has any outstanding warrants and if the vehicle is stolen.").

[29] *See Reese v. Anderson*, 926 F.2d 494, 496, 500–01 (5th Cir. 1991) (refusing to find excessive force where the suspect repeatedly refused to keep hands raised and appeared to be reaching for an object).

[30] The Houston Police Department's investigation of the incident revealed Barnes had a criminal record and a loaded handgun under the driver's seat.

No. 22-20519

it for Felix to retrieve himself. Barnes placed his keys near the gearshift and the blinker turned off.

At 2:45 p.m., exercising his right of self-protection, Felix ordered Barnes to exit the vehicle and placed his right hand on his holster as the door opened.[31] Ignoring Felix's order, Barnes grabbed his keys, started the engine, and began to drive away.[32] Understandably, Felix recognized this conduct as an attempt to flee.[33] Felix said something to the effect of "don't do it."

In that moment, "all that a reasonable police officer could have concluded was that [Barnes] was intent on . . . flight and that, if he [were] allowed to do so, he would . . . pose a deadly threat for others on the road" — the vehicle would enter traffic in the fast-lane of the freeway.[34] Because the very "fact that a suspect flees when suspected of a minor offense could well be indicative of a larger danger," Felix faced a split-second decision between

---

[31] *Mimms*, 434 U.S. at 110–11; *see also United States v. Banuelos-Romero*, 597 F.3d 763, 767 (5th Cir. 2010) (officer conducting traffic stop may investigate further upon reasonable suspicion of additional criminal activity); *United States v. Garcia*, 592 F.2d 259, 260 (5th Cir. 1979) (per curiam) (holding that reasonable suspicion "was supplied by the smell of the marijuana"); *United States v. Conley*, No. 22-30037, 2023 WL 2327457, at *3 (5th Cir. Mar. 2, 2023) (per curiam) (unpublished) (same).

[32] *See Young v. City of Killeen*, 775 F.2d 1349, 1351, 1352–53 (5th Cir. 1985) (upholding the use of deadly force when the suspect refused to exit the vehicle and "reached down to the seat or floorboard of his car" as if to retrieve something).

[33] Felix testified he "already had a perception of maybe something, a weapon or him trying to flee at the same moment."

[34] *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014); *see also Barnes*, 605 U.S. at 86 (KAVANAUGH, J., concurring) ("[W]hen, as in this case, the driver suddenly pulls away in the midst of a stop, the risks multiply. A driver speeding away from a traffic stop could easily endanger bystanders and other drivers.").

only bad options.[35] Had Felix remained flatfooted on the pavement, Barnes could have started a perilous high-speed chase during rush hour on Houston's busiest toll road—or, even if he did not speed away, he could have seriously injured Felix with the car.[36] If Felix stepped onto the car, he could at least hang on and command Barnes to stop.[37]

Felix mounted the doorsill with one foot, placing his body partially inside the car. Then, as the vehicle accelerated, Felix stepped on with both feet and yelled, "don't f---ing move!" twice. In the little time Felix had to act, and with the little he knew about Barnes, Felix did not act unreasonably in protecting himself and possibly others.[38] Instead, Felix—having spent

---

[35] *Lange v. California*, 594 U.S. 295, 331 (2021) (ROBERTS, C.J., concurring); *see also Barnes*, 605 U.S. at 86 (KAVANAUGH, J., concurring) ("Fleeing from the traffic stop could suggest that the driver is preparing to commit or has committed a more serious crime—and is attempting to evade detection or arrest."); TEX. PENAL CODE § 38.04 (intentionally fleeing from police officer attempting lawful detainment constitutes an offense). Felix testified he "had nothing on Mr. Barnes, not even a name, so I didn't know who he was, what he was capable of or what he could do. So for him trying to flee in this situation definitely threw up a flag that there was something . . . that needed to be stopped."

[36] *See Barnes*, 605 U.S. at 87–89 (KAVANAUGH, J., concurring) (discussing an officer's potential responses to flight, none of which are "particularly good or safe options").

[37] *See id.*

[38] *See Graham*, 490 U.S. at 396–97 ("[P]olice officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving."); *Thompson v. Mercer*, 762 F.3d 433, 438 (5th Cir. 2014) (stating it was the fleeing driver, and not the officer, "who intentionally placed himself and the public in danger by unlawfully engaging in the reckless, high-speed flight that ultimately produced the [officer's] choice between two evils"); *Davis v. Romer*, 600 F. App'x 926, 930 (5th Cir. 2015) (finding argument that the "officer could have moved away from the car is, unfortunately, a suggestion more reflective of the peace of a judge's chambers than of a dangerous and threatening situation on the street" (cleaned up) (citation omitted)).

eleven years on the job with an Advanced Peace Officer license—did exactly what he was trained to do.

As Felix clung to the doorframe of the accelerating car, he withdrew then reinserted his weapon into the passenger compartment toward the driver's seat. Barnes kept driving. Felix shot inside the vehicle, "act[ing] reasonably in using deadly force to end [the] risk [of flight]."[39] And because Barnes still did not stop, Felix acted reasonably in firing a second shot.[40] Felix continued to hold Barnes at gunpoint until backup arrived, and Barnes was pronounced dead at the scene at 2:57 p.m.

Based on the undisputed events depicted in the video and Felix's uncontested sworn testimony, we find, based on the totality of the circumstances, that no genuine dispute of material fact exists as to whether Felix used excessive force in an objectively unreasonable manner at any time in the traffic stop.[41] And because the plaintiffs have failed to satisfy the first

---

[39] *Plumhoff*, 572 U.S. at 777; *see also Young*, 775 F.2d at 1352–53; *Graham*, 490 U.S. at 396–97.

[40] *See Plumhoff*, 572 U.S. at 777 ("It stands to reason that, if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended.").

[41] *See* Fed. R. Civ. P. 56(a). The plaintiffs contend material factual disputes exist regarding Barnes's conduct during the stop. Some allegations cannot be independently verified by the dashcam footage and are supported only by Felix's testimony, which the plaintiffs claim varies "wildly." True, Felix has provided several explanations for his conduct, *i.e.*, fear for his life and the safety of others on the road, along with a suspicion that Barnes's flight indicated a more serious crime prompting his evasion. But these reasons are not mutually exclusive. The plaintiffs "provide no evidence to support their skepticism, and at the summary judgment stage, we require evidence—not absolute proof, but not mere allegations either." *Ontiveros*, 564 F.3d at 383 (quotations and citation omitted). Moreover, our inquiry is one of "objective reasonableness," not subjective intent, viewed from "the perspective of a reasonable officer on the scene." *Id.* at 382; *Graham*, 490 U.S. at 396. We need not venture to divine Felix's thoughts; instead,

No. 22-20519

step of the qualified-immunity analysis—raising a dispute of material fact on whether Barnes's Fourth Amendment right to be free from excessive force was violated—we do not reach whether the violated right was "clearly established" at the time of the incident. Accordingly, the plaintiffs have failed to meet their burden to defeat Felix's invocation of qualified immunity, and Felix is entitled to summary judgment on the excessive- and deadly-force claims against him. And as the plaintiffs have failed to show a constitutional violation, their claims against the county fail. Summary judgment is proper as to all claims against Harris County. For the foregoing reasons, we AFFIRM.

---

we ask whether a reasonable officer under Felix's circumstances would have resorted to deadly force to protect himself and others and to prevent an attempted evasion.

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

September 18, 2025

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW

Regarding:  Fifth Circuit Statement on Petitions for Rehearing
            or Rehearing En Banc

        No. 22-20519    Barnes v. Felix
                        USDC No. 4:18-CV-725

Enclosed is a copy of the court's decision.  The court has entered
judgment under Fed. R. App. P. 36.  (However, the opinion may yet
contain typographical or printing errors which are subject to
correction.)

Fed. R. App. P. 39 through 41, and Fed. R. App. P. 39, 40, and 41
govern costs, rehearings, and mandates.  **Fed. R. App. P. 40 require
you to attach to your petition for panel rehearing or rehearing en
banc an unmarked copy of the court's opinion or order.**  Please
read carefully the Internal Operating Procedures (IOP's) following
Fed. R. App. P. 40 for a discussion of when a rehearing may be
appropriate, the legal standards applied and sanctions which may
be imposed if you make a nonmeritorious petition for rehearing en
banc.

Direct Criminal Appeals.  Fed. R. App. P. 41 provides that a motion
for a stay of mandate under Fed. R. App. P. 41 will not be granted
simply upon request.  The petition must set forth good cause for
a stay or clearly demonstrate that a substantial question will be
presented to the Supreme Court.  Otherwise, this court may deny
the motion and issue the mandate immediately.

Pro Se Cases.  If you were unsuccessful in the district court
and/or on appeal, and are considering filing a petition for
certiorari in the United States Supreme Court, you do not need to
file a motion for stay of mandate under Fed. R. App. P. 41.  The
issuance of the mandate does not affect the time, or your right,
to file with the Supreme Court.

Court Appointed Counsel.  Court appointed counsel is responsible
for filing petition(s) for rehearing(s) (panel and/or en banc) and
writ(s) of certiorari to the U.S. Supreme Court, unless relieved
of your obligation by court order.  If it is your intention to
file a motion to withdraw as counsel, you should notify your client
promptly, **and advise them of the time limits for filing for
rehearing and certiorari.**  Additionally, you MUST confirm that
this information was given to your client, within the body of your
motion to withdraw as counsel.

The judgment entered provides that each party bear its own costs on appeal.


                              Sincerely,

                              LYLE W. CAYCE, Clerk

                              By: _____
                              Melissa B. Courseault, Deputy Clerk

Enclosure(s)

Mr. Tommy Duane Barnes
Mr. Michael James Bentley
Mr. James Carroll Butt
Mr. Adam Fomby
Mr. Howard Rene Fomby II
Mr. Robert Henry Ford
Ms. Rachel Susan Fraser
Mr. Seth Barrett Hopkins