No. 22-20519

IN THE
## United States Court of Appeals
### FOR THE FIFTH CIRCUIT

JANICE HUGHES BARNES, INDIVIDUALLY AND AS REPRESENTATIVE
OF THE ESTATE OF ASHTIAN BARNES, DECEASED; TOMMY DUANE
BARNES,

*Plaintiffs-Appellants,*

v.

ROBERTO FELIX, JR.; COUNTY OF HARRIS, TEXAS,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
USDC No. 4:18-CV-725

**MOTION FOR LEAVE TO FILE BRIEF AS *AMICI CURIAE*
URGING EN BANC REVIEW ON BEHALF OF
THE LAW ENFORCEMENT ACTION PARTNERSHIP AND NATIONAL
POLICE ACCOUNTABILITY PROJECT**

Lauren Bonds
Eliana Machefsky
NATIONAL POLICE
ACCOUNTABILITY PROJECT
1403 Southwest Blvd
Kanas City, KS 66103
(504) 220-0401
*Counsel for Amici*

November 10, 2025

## MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF

The above-captioned proposed *amicus curiae* request leave of the Court to file a brief in support of Appellant. *See* Fed. R. App. P. 29(a); Local Rule 29.1. The proposed brief addresses the issue of the broader implications and impacts of the panel's decision. Specifically, the proposed brief explains how the panel's decision will undermine public confidence in law enforcement by perpetuating perceptions that law enforcement officers are above the law. The proposed brief is attached to this motion. In support of the Court granting leave, the proposed *amici curiae* state as follows:

1) Counsel for Petitioner consents to the proposed *amicus curiae* brief.

2) Accordingly, Movant has not been able to obtain consent to the proposed *amici curiae* brief from the Respondents.

3) The National Police Accountability Project was founded in 1999 to address misconduct by law enforcement officers through coordinating and assisting civil-rights lawyers.

4) NPAP has approximately 550 attorney members practicing in every region of the United States, including over thirty in the Fifth Circuit. Every year, NPAP members litigate the thousands of egregious cases of law enforcement abuse that do not make news headlines as well as the high-profile cases that capture national attention. NPAP provides training and support for these attorneys and resources for non-profit organizations and community groups working on police and correction officer accountability issues.

5) NPAP frequently participates as *amicus curiae* to protect the interests of these communities, both in the Supreme Court and before this Court. Most recently, at this Court, NPAP has participated as an *amicus curiae* in *Gonzalez v. Trevino*, No. 21-50276; and *Moore v. LaSalle Management et. al.*, 20-30739.

6) The Law Enforcement Action Partnership (LEAP) is a nonprofit organization whose members include police, prosecutors, judges, corrections officials, and other law enforcement officials advocating for criminal justice and drug policy reforms that will make our communities safer and more just. Founded by five police officers in 2002 with a sole focus on drug policy, today LEAP's speakers bureau numbers more than 275 criminal justice professionals advising on police community relations, incarceration, harm reduction, drug policy, and global issues.

7) Proposed *amici curiae* and their members have significant experience litigating issues related to police accountability in federal appellate courts.

8) The proposed brief will assist the Court by providing insights on the real-world implications that the panel's decision will have on police officers if it is permitted to stand. Further, the brief will provide broader policy context of the importance of civil rights litigation as a police accountability measure.

9) Proposed *amici curiae* have an interest in this case because the panel's decision will have the effect of undermining accountability for law

enforcement which will reduce public trust in the police and make police officers jobs harder by reducing cooperation with criminal investigations.

10) Proposed *amici curiae* seek this Court's permission to submit the attached brief in support of Petitioner.

For these reasons, proposed *amici curiae* respectfully request that this Court grant them leave to appear as *amici curiae*, and to file the attached brief for consideration of the Court.

Respectfully submitted,

<u>/s/ Lauren Bonds</u>

Lauren Bonds
NATIONAL POLICE ACCOUNTABILITY PROJECT
1403 SOUTHEWST BLVD
KANSAS CITY, KS 66103
(504) 220-0401

Date: November 10, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Motion for Leave filed by Lauren Bonds was served upon all counsel of record for parties and *amici*, via CM/ECF, on November 10, 2025. All participants in this case are registered CM/ECF users and will be served electronically via that system.


Respectfully submitted,

<u>/s/ Lauren Bonds</u>
Lauren Bonds

No. 22-20519

IN THE
United States Court of Appeals
for the Fifth Circuit

JANICE HUGHES BARNES, individually and as representative
of the estate of Ashtian Barnes, deceased; TOMMY DUANE BARNES,

*Plaintiffs-Appellants,*

v.

ROBERTO FELIX, JR.; COUNTY OF HARRIS, TEXAS,

*Defendants-Appellants.*

_____

On Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-725

_____

**AMICUS BRIEF OF THE LAW ENFORCEMENT ACTION
PARTNERSHIP AND NATIONAL POLICE ACCOUNTABILITY
PROJECT IN SUPPORT PETITION FOR EN BANC
REHEARING**

<div style="margin-left:40%">

Lauren Bonds
Eliana Machefsky
NATIONAL POLICE
ACCOUNTABILITY PROJECT
1403 Southwest Blvd
Kanas City, KS 66103
(620) 664-8584


*Counsel for Amici*

</div>

November 10, 2025

# CERTIFICATE OF INTERESTED PERSONS

(1)  Case No. 22-20519, *Felix v. Barnes*

(2) The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Janice Hughes Barnes, Plaintiff-Appellant.

Tommy Duane Barnes, Plaintiff-Appellant, represented pro se

Roberto Felix, Jr., Defendant-Appellee

County of Harris, Texas, Defendant-Appellee

Adam W. Fomby, counsel for Janice Hughes Barnes

Howard R. Fomby, counsel for Janice Hughes Barnes

Fomby Law Firm, counsel for Janice Hughes Barnes

Seth Hopkins, counsel for County of Harris, Texas

County Attorney's Office, counsel for County of Harris, Texas

Robert H. Ford, counsel for Roberto Felix, Jr.

Bradley, Arant, Boult, Cummings LLP, counsel for Roberto Felix, Jr.

Nathaniel A.G. Zelinsky

Katherine Wellington

Matthew S. Dorritie

Rachel E. Record

Neal Kumar Katyal

Ezra P. Louvis

Mackenzie Dulay Austin

Hogan Lovells US LLP

Milbank LLP

Lisa S. Blatt

Charles L. McCloud

Peter S. Jorgensen

Erin M. Sielaff

Hallie Saunders

Brett V. Ries

Garrett M. Wen

Williams & Connolly LLP

Judith Ramsey Saldana

Thompson, Coe, Cousins & Irons, LLP

James Carroll Butt

Lauren Bonds

Eliana Machefsky

National Police Accountability Project

Law Enforcement Action Partnership

/s/ Lauren Bonds
Attorney for Amici Curiae

## CORPORATE DISCLOSURE STATEMENT

Amici are nonprofit organizations. They have no parent corporations, and no publicly held corporation owns any portion of any of them. Amici does not have a financial interest in the outcome of this litigation.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................................. i

CORPORATE DISCLOSURE STATEMENT ............................................................. iii

TABLE OF CONTENTS .................................................................................... iv

TABLE OF AUTHORITIES................................................................................. iv

INTEREST OF AMICI CURIAE ........................................................................... 1

INTRODUCTION............................................................................................. 3

ARGUMENT................................................................................................... 4

    I.    Accountability for Law Enforcement Officers and Their Employers Is Crucial to Public Confidence in the Police and the Government. ......................................... 4

    II.    Civil Rights Litigation is The Most Reliable Accountability Mechanism to Address Police Misconduct. ..................................................................................... 6

CONCLUSION ................................................................................................ 8

CERTIFICATE OF COMPLIANCE ....................................................................... 10

CERTIFICATE OF SERVICE .............................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Horvath v. City of Leander*, 946 F.3d 787 (5th Cir. 2020) ............................................ 4

*United States v. Taffaro*, 919 F.3d 947 (5th Cir. 2019) ............................................... 4

**Other Authorities**

Aaron Moselle, *Report: Less than 1% of civilian complaints against Philly police result in discipline*, WHYY, May 14, 2021 ................................................................. 9

Debra Livingston, *The Unfulfilled Promise of Citizen Review*, 1Ohio St. J. Crim. L. 653 (2004)........................................................................................................ 9

DOJ Office of Justice Programs, *Factors That Influence Public Opinion of the Police* (June 2003)...................................................................................................... 6

Matthew Desmond et. seq., Police Violence and Citizen Crime Reporting in the Black Community, 81 Am. Soc. Rev. 857 (2016) ...................................................... 7

Megan Brenan, *U.S. Confidence in Institutions Mostly Flat, but Police Up*, Gallup (July 15, 2024)................................................................................................... 7

N'dea Yancey Bragg, *Cops are on trial in two high-profile cases. Is it easier to prosecute police now?* USA Today, Oct. 10, 2023 ..................................................... 9

Rachel Moran, *Ending the Internal Affairs Farce*, 64 Buff. L. Rev. 837 (2016).......... 8

*Texas Trends Survey 2021: Criminal Justice*, HOBBY SCHOOL OF PUBLIC
AFFAIRS UNIVERSITY OF HOUSTON............................................................... 7

Tom. R. Tyler and Jeffrey Fagan, *Legitimacy and Cooperation: Why Do People Help
the Police Fight Crime in Their Communities*, 6 OHIO STATE J. CRIM. LAW 231
(2008) ............................................................................................................... 6

Wesley Muller, *La. Residents believe police treat Black people worse, LSU survey
finds*, Louisiana Illuminator, Apr. 9, 2021............................................................. 7

**INTEREST OF AMICI CURIAE**[1]

**The Law Enforcement Action Partnership (LEAP)** is a nonprofit organization whose members include police, prosecutors, judges, corrections officials, and other law enforcement officials advocating for criminal justice and drug policy reforms that will make our communities safer and more just. Founded by five police officers in 2002 with a sole focus on drug policy, today LEAP's speakers bureau numbers more than 275 criminal justice professionals advising on police community relations, incarceration, harm reduction, drug policy, and global issues. Through speaking engagements, media appearances, testimony, and support of allied efforts, LEAP reaches audiences across a wide spectrum of affiliations and beliefs, calling for more practical and ethical policies from a public safety perspective.

**The National Police Accountability Project (NPAP)** was founded in 1999 by members of the National Lawyers Guild to address misconduct by law enforcement officers through coordinating and assisting civil-rights lawyers. NPAP has approximately 550 attorney members practicing in every region of the United States, including thirty members in in states within the Fifth Circuit. Every year, NPAP members litigate the thousands of egregious cases of law enforcement abuse that do not make news headlines as well as the high-profile cases that capture national attention. NPAP provides training and support for these attorneys and resources for

---

[1] No Party has contributed to the preparation of this brief; it has been entirely prepared by *AmicI* or its counsel.

non-profit organizations and community groups working on police and correction officer accountability issues. NPAP also advocates for legislation to increase police accountability and appears regularly as amicus curiae in cases, such as this one, presenting issues of particular importance for its members and their clients.

# INTRODUCTION

Public trust in law enforcement is essential to a functioning democracy, yet it is eroded when officers are shielded from accountability for clear constitutional violations. When the civilians do not trust police, they are less likely to report crimes, cooperate with investigations, and assist with government-run public safety initiatives. In particular, studies have shown that when police get away with misconduct, impacted communities are less likely to call 911 for police-related services.

With public confidence in police at an all-time low, meaningful accountability for police officers that break the law is more important than ever. While federal civil rights litigation is not the only way to hold police accountable, it is the most reliable method to pursue consequences for an officer that engages in misconduct. Accordingly, federal courts bear a unique responsibility in preventing the further decline of public trust in the police. If civil rights plaintiffs are denied a meaningful opportunity to seek justice for officer misconduct in federal courts, the perception that police are above the law will persist to the detriment of police cooperation and public safety.

This case presents a troubling example of why a large portion of the public does not trust the police and believes that officers can break the law with impunity. Defendant Felix shot Mr. Barnes when he presented no immediate threat and the panel dismissed Mr. Barnes's case without applying the proper summary judgment standard. By allowing officers to evade responsibility by exempting them from the

regular standards of civil litigation, the panel decision undermines well-established precedent and further weakens public confidence in law enforcement.

## ARGUMENT

### I.  Accountability for Law Enforcement Officers Is Crucial to Public Confidence in the Police and the Government.

This Court has held "law enforcement officials and other public officials who engage in misconduct should be held accountable. Nothing is more corrosive to public confidence in our criminal justice system than the perception that there are two different legal standards. Public officials who violate the law without consequence only further fuel public cynicism and distrust of our institutions of government." *Horvath v. City of Leander*, 946 F.3d 787, 801 (5th Cir. 2020) (citing *United States v. Taffaro*, 919 F.3d 947, 949 (5th Cir. 2019) (internal quotation marks omitted).

There is a demonstrated link between public trust and confidence in police and whether communities cooperate with the police. *See* Tom. R. Tyler and Jeffrey Fagan, *Legitimacy and Cooperation: Why Do People Help the Police Fight Crime in Their Communities*, 6 OHIO STATE J. CRIM. LAW 231, 250 (2008) (finding that individual perception of police legitimacy influenced survey respondents' willingness to cooperate with the police, including reporting crimes and suspicious activity and helping find people accused of criminal activity); *see also* DOJ Office of Justice Programs, *Factors That Influence Public Opinion of the Police* 10 (June 2003) ("Public acceptance of police authority is essential to maintain public order.

Public confidence in police can lead to cooperation that is needed for effective policing."). A case study in Milwaukee is illustrative. Between 2004 and 2010, researchers from Harvard, Yale, and Oxford Universities analyzed police-related 911 calls in Milwaukee. Matthew Desmond, Andrew V. Papachristos, & David S. Kirk, Police Violence and Citizen Crime Reporting in the Black Community, 81 Am. Soc. Rev. 857, 861 (2016) (Fifty-six percent of the total loss in calls occurred in Black neighborhoods). Following a widely publicized local incident of police brutality, Milwaukee residents' 911 calls fell below expected rates, especially in Black neighborhoods.  Thus, instances of police misconduct not only can decrease trust and legitimacy, but "they also—by driving down 911 calls— thwart the suppression of law breaking, obstruct the application of justice, and ultimately make cities as a whole, and the black community in particular, less safe." *Id.*

Today, only about half of the country currently feels confidence in the police. Megan Brenan, *U.S. Confidence in Institutions Mostly Flat, but Police Up*, Gallup (July 15, 2024) (Americans' confidence in the police in 2024 is 51% overall). The views of people who live in states throughout the Fifth Circuit closely align with the national perspectives, particularly in Black communities. In a recent University of Houston study, only fifty percent (50%) of Black Texans polled trusted police in their community. *Texas Trends Survey 2021: Criminal Justice*, HOBBY SCHOOL OF PUBLIC AFFAIRS UNIVERSITY OF HOUSTON, at 12.[2]  A 2021 survey of Louisiana

---

[2] Accessible at: https://www.uh.edu/hobby/txtrends/txtrends2021_report3.pdf.

residents found that 54% of people believed that the police treated Black people less fairly than White people, with a stark majority of Black survey respondents reporting that they do not trust law enforcement execute their duties in an impartial manner. Wesley Muller, *La. Residents believe police treat Black people worse, LSU survey finds*, Louisiana Illuminator, Apr. 9, 2021.[3]

Given the historically low rates of public confidence in the police, it is essential that courts provide an appropriate avenue for police accountability. Public trust cannot be achieved when there is a perception of "two different legal standards" for police and the public. Nor can the effective functioning of police and public safety for which public trust is an essential prerequisite.

## II.    Civil Rights Litigation is The Most Reliable Accountability Mechanism to Address Police Misconduct.

Sadly, Section 1983 litigation often offers the only viable avenue for people harmed by police misconduct to achieve the accountability that is essential for preserving confidence in law enforcement. Few officers face employment or criminal consequences when they engage in misconduct. Moreover, state court remedies are rarely available due to statutory immunity schemes. Federal court civil rights litigation—like the case that the Barnes family pursued in Southern District of Texas—is the only consequence that most officers realistically face. Accordingly, ensuring victims get a real chance at a day in federal court is critical.

---

[3] Accessible at: https://lailluminator.com/2021/04/09/police-treat-black-people-worse-lsu-survey-finds/

Due to inadequate investigations and bias, internal affairs investigations into civilian complaints are rarely sustained and even less frequently result in discipline for the officer. *See* Rachel Moran, *Ending the Internal Affairs Farce*, 64 Buff. L. Rev. 837, 859 (2016)("internal investigations are notoriously biased in favor of fellow officers"); Aaron Moselle, *Report: Less than 1% of civilian complaints against Philly police result in discipline*, WHYY, May 14, 2021.[4] Moreover, civilian oversight boards generally lack the authority and resources to meaningfully investigate officers and impose any sanctions when they do identify misconduct. *See, e.g.*, Debra Livingston, *The Unfulfilled Promise of Citizen Review*, 1Ohio St. J. Crim. L. 653, 656 (2004) (noting that citizen review agencies do not necessarily substantiate more complaints than internal investigative units). Criminal consequences are even more rare. Criminal charges are brought in less than 2% of police shooting deaths. N'dea Yancey Bragg, *Cops are on trial in two high-profile cases. Is it easier to prosecute police now?* USA Today, Oct. 10, 2023.[5]

Finally, while state courts provide remedies for certain types of police abuse, many existing tort law regimes deprive plaintiffs of relief for common injuries that flow from police misconduct like interference with speech and protest rights. To have a real shot at justice, victims must file a civil rights case in federal court.

---

[4] Accessible at: https://whyy.org/articles/report-less-than-1-of-civilian-complaints-filed-against-philly-police-result-in-discipline/

[5] Accessibleat:https://www.usatoday.com/story/news/nation/2023/10/10/prosecutingpolice-killings-still-rare/71068794007/

Because accountability is so hard to achieve through other means, it is essential that federal courts faithfully and fairly apply the substantive and procedural doctrines so that civil rights plaintiffs have a chance to prove their case. That is not what the panel did in the Barnes's families' case. As Petitioner's brief notes, the Court deprived the plaintiff of the opportunity to present their case to a jury by inverting the summary judgment standard and failing to analyze the reasonableness of the officer's conduct. Petitioner's Brief at 12-13.  These errors place Defendant Felix above the law and communicate to the public that police will not be subject to legal accountability processes, even if they take a life. While this outcome will be devastating for the Barnes family, it also has broader negative implications that will reach far beyond this case. Leaving in place the panel's decision in place will further erode the fragile confidence in police and ultimately make it more difficult for them to perform their jobs effectively.

*Amici* urge the court to grant *en banc* rehearing to address the questions of exceptional importance underlying this case.

## CONCLUSION

For the foregoing reasons, in addition to the reasons in Petitioners' brief, the judgment of the panel should be vacated, and this case reheard *en banc*.

/s/ Lauren Bonds
Lauren Bonds
NATIONAL POLICE ACCOUNTABILITY PROJECT
1403 Southwest Blvd
Kansas City, KS 66103

Counsel for Amici Curiae

November 10, 2025

CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that this brief:

> (i) complies with the type-volume limitation of Rule 32(a)(7)(B) because it contains 2382 words, including footnotes and excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii); and
>
> (ii) complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 16.66.1, set in Century Schoolbook 12-point type.

<u>/s/ Lauren Bonds</u>
Lauren Bonds

CERTIFICATE OF SERVICE

I certify that on November 10, 2025, this brief was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system.

/s/ Lauren Bonds
Lauren Bonds