**Case No. 22-20519**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

JANICE HUGHES BARNES, Individually and as Representative of THE ESTATE OF ASHTIAN BARNES, deceased; TOMMY DUANE BARNES;

*Plaintiffs-Appellants,*

v.

ROBERTO FELIX, JR.; COUNTY OF HARRIS, TEXAS,

*Defendants-Appellees.*

———————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-725

———————————————

## MOTION OF THE CATO INSTITUTE FOR LEAVE TO FILE BRIEF AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF-APPELLANT JANICE HUGHES BARNES'S PANEL AND EN BANC REHEARING PETITION

———————————————

Matthew P. Cavedon
*Counsel of Record*
Michael Z. Fox
CATO INSTITUTE
1000 Mass. Ave., N.W.
Washington, DC 20002
706-309-2859
mcavedon@cato.org

November 10, 2025

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Case No. 22-20519

*Barnes, et al. v. Felix, et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Person or Entity | Connection to Case |
| --- | --- |
| Cato Institute | *Amicus curiae* |
| Matthew P. Cavedon | *Counsel for amicus curiae* |
| Michael Z. Fox | *Counsel for amicus curiae* |

The Cato Institute is a nonprofit entity operating under § 501(c)(3) of the Internal Revenue Code. *Amicus* is not a subsidiary or affiliate of any publicly owned corporation and does not issue shares of stock. No publicly held corporation has a direct financial interest in the outcome of this litigation due to the *amicus*'s participation.

/s/ Matthew P. Cavedon

i

## MOTION FOR LEAVE TO PARTICIPATE AS *AMICUS CURIAE*

On September 18, 2025, a panel of this Court decided the above-captioned appeal. On remand from the Supreme Court, the panel found that no genuine dispute of fact exists and granted summary judgment for the Defendants-Appellees. On November 3, 2025, Plaintiffs-Appellants petitioned this Court for both panel rehearing and, if denied, rehearing en banc.

Movant Cato Institute now seeks leave under FRAP 29(b)(2) for leave to file an *amicus curiae* brief in support of that motion. Attached to this motion is a copy of the Cato Institute's proposed *amicus curiae* brief.

## IDENTITY OF THE PROPOSED *AMICUS CURIAE*

The Cato Institute is a nonpartisan public policy research foundation founded in 1977 and dedicated to advancing the principles of individual liberty, free markets, and limited government. Cato's Project on Criminal Justice was founded in 1999, and focuses on the scope of substantive criminal liability, the proper and effective role of police in their communities, the protection of constitutional and statutory safeguards for criminal suspects and defendants, citizen participation in the criminal justice system, and accountability for law enforcement.

## INTEREST OF THE PROPOSED *AMICUS CURIAE*

*Amicus*'s interest in this case arises from its commitment to preserving the jury's constitutionally assigned role as a vital check on government abuse and from its concern that insulating officials from accountability corrodes the rule of law.

## REASONS TO ALLOW THE PROPOSED *AMICUS CURIAE* BRIEF

This *amicus curiae* brief provides unique historical perspective on citizen juries, arguing that the Framers intended jurors to be the final arbiters in disputes between citizens and their government. This brief explains how the panel's decision ignores this foundational principle. In effect, the panel's ruling invites police to use excessive force, negatively impacts victims of serious governmental misconduct, and shields officers from the very accountability to citizen jurors that the Constitution assigns.

For the foregoing reasons, *Amicus* respectfully requests that the Court grant this motion for leave to file an *amicus curiae* brief in support of Plaintiffs-Appellants' panel and en banc rehearing petition.

## CERTIFICATE OF CONFERENCE

*Amicus* has contacted counsel for Plaintiffs-Appellants and Defendants-Appellees via email, and all parties are unopposed to the filing of this motion and the filing of this *amicus curiae* brief.

## CONCLUSION

Based on the foregoing, the Cato Institute respectfully requests this Court to grant the motion for leave to file the attached *amicus curiae* brief in support of Plaintiffs-Appellants' pending panel and en banc rehearing petition.

Respectfully submitted,

/s/ Matthew P. Cavedon
Matthew P. Cavedon
    *Counsel of Record*
Michael Z. Fox
CATO INSTITUTE
1000 Massachusetts Ave. NW
Washington, DC 20001
706-309-2859
mcavedon@cato.org

November 10, 2025

## CERTIFICATE OF COMPLIANCE

1. This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 408 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2. This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in 14-point Times New Roman typeface.

/s/ Matthew P. Cavedon

November 10, 2025

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court, who will enter it into the CM/ECF system, which will send a notification of such filing to the appropriate counsel.

/s/ Matthew P. Cavedon

November 10, 2025

**Case No. 22-20519**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

JANICE HUGHES BARNES, Individually and as Representative of THE ESTATE OF ASHTIAN BARNES, deceased; TOMMY DUANE BARNES;

*Plaintiffs-Appellants,*

v.

ROBERTO FELIX, JR.; COUNTY OF HARRIS, TEXAS,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-725

———————————

**BRIEF OF THE CATO INSTITUTE AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF-APPELLANT JANICE HUGHES BARNES'S PANEL AND EN BANC REHEARING PETITION**

———————————

Matthew P. Cavedon
*Counsel of Record*
Michael Z. Fox
CATO INSTITUTE
1000 Massachusetts Ave., NW
Washington, DC 20002
706-309-2859
mcavedon@cato.org

November 10, 2025

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Case No. 22-20519

*Barnes, et al. v. Felix, et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Person or Entity | Connection to Case |
|---|---|
| Cato Institute | *Amicus curiae* |
| Matthew P. Cavedon | *Counsel for amicus curiae* |
| Michael Z. Fox | *Counsel for amicus curiae* |

The Cato Institute is a nonprofit entity operating under § 501(c)(3) of the Internal Revenue Code. *Amicus* is not a subsidiary or affiliate of any publicly owned corporation and does not issue shares of stock. No publicly held corporation has a direct financial interest in the outcome of this litigation due to the *amicus*'s participation.

/s/ Matthew P. Cavedon

i

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ......................................................................i

TABLE OF AUTHORITIES ................................................................... iii

INTEREST OF *AMICUS CURIAE*..............................................................1

INTRODUCTION AND SUMMARY OF THE ARGUMENT ..............................1

ARGUMENT ......................................................................................3

    I.   JURIES ARE FUNDAMENTAL TO OUR CIVIL JUSTICE SYSTEM..................................................................................3

    II.  THE REASONABLENESS OF FELIX'S USE OF FORCE IS A QUESTION OF FACT FOR A JURY. .......................................7

CONCLUSION ....................................................................................9

CERTIFICATE OF COMPLIANCE.......................................................11

CERTIFICATE OF SERVICE ..............................................................12

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..............................8

*Baker v. Coburn*, 68 F.4th 240 (5th Cir. 2023).....................................9

*Barnes v. Felix*, 152 F.4th 669 (5th Cir. 2025)..................................3, 8

*Barnes v. Felix*, 532 F. Supp. 3d 463 (S.D. Tex. 2021).........................1, 2

*Barnes v. Felix*, 91 F.4th 393 (5th Cir. 2024)..................................2, 8

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687 (1999) ...................................................................................7

*Dimick v. Schiedt*, 293 U.S. 474 (1935)...........................................7

*Flores v. City of Palacios*, 381 F.3d 391 (5th Cir. 2004) .......................9

*Heck v. Humphrey*, 512 U.S. 477 (1994)...........................................7

*Lytle v. Bexar Cty.*, 560 F.3d 404 (5th Cir. 2000) ..............................9

*Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268 (5th Cir. 2015).....................................................................................2

*Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986)......................7

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) .............................7

*Parsons v. Bedford*, 28 U.S. (3 Pet.) 433 (1830) ................................6

*SEC v. Jarkesy*, 603 U.S. 109 (2024)...........................................4, 6

*Spiller v. Harris County*, 113 F.4th 573 (5th Cir. 2024) ........................9

*Tolan v. Cotton*, 572 U.S. 650 (2014)............................................8

## Other Authorities

ANNALS OF CONG. 454 (Joseph Gales ed., 1789) .....................................4

Charles W. Wolfram, *The Constitutional History of the Seventh Amendment*, 57 MINN. L. REV. 639 (1973) ............................................................6

Declaration and Resolves of the First Continental Congress of 1774 ......................5

*Declaration of Independence: A Transcription*, NAT'L ARCHIVES ..........................5

Declaration of Rights of the Stamp Act Congress of 1765 ......................................4

Declaration of the Causes and Necessity of Taking Up Arms (July 6, 1775)...........5

DOCUMENTS ILLUSTRATIVE OF THE FORMATION OF THE UNION OF THE AMERICAN STATES (Charles C. Tansill ed., 1927).................................................5

Hon. Jennifer W. Elrod, *Is the Jury Still Out?: A Case for the Continued Viability of the American Jury,* 44 TEX. TECH. L REV. 303 (2012) ......................3

Hon. Kathleen M. O'Malley, *Foreword: Trial by Jury: Why It Works and Why It Matters*, 68 AM. U. L. REV. 1095 (2019)....................................................4

*Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022) ..........................................................4

Kenneth S. Klein, *The Validity of the Public Rights Doctrine in Light of the Historical Rationale of the Seventh Amendment*, 21 HASTINGS CONST. L.Q. 1013 (1994) ..............................................................................................6

Letter from George Mason to the Committee of Merchants in London (June 6, 1766)..............................................................................................5

Letter from Thomas Jefferson to Thomas Paine (July 11, 1789) .............................3

Mark W. Bennett, *Judges' Views on Vanishing Civil Trials*, 88 JUDICATURE 306 (2005) ......................................................................................................4

Resolutions of the Stamp Act Congress (Oct. 19, 1765)..........................................4

SOURCES OF OUR LIBERTIES (R. Perry & J. Cooper eds. 1959) .................................4

THE FEDERALIST No. 83 (Alexander Hamilton).........................................................6

THE FOUNDERS' CONSTITUTION ..............................................................................4

## INTEREST OF *AMICUS CURIAE*[1]

The Cato Institute, established in 1977, is a nonpartisan public policy research foundation dedicated to advancing the principles of individual liberty, free markets, and limited government. Cato's Project on Criminal Justice focuses on the scope of criminal liability, the proper and effective role of police in their communities, the protection of constitutional and statutory safeguards for criminal suspects and defendants, citizen participation in the criminal justice system, and accountability for law enforcement.

*Amicus*'s interest in this case arises from its commitment to preserving the jury's constitutionally assigned role as a vital check on government abuse and from its concern that insulating officials from accountability corrodes the rule of law.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

In 2016, Officer Roberto Felix, Jr. stopped Ashtian Barnes for outstanding toll violations while Ashtian was driving his girlfriend's rental car on the Sam Houston Tollway. *Barnes v. Felix*, 532 F. Supp. 3d 463, 466 (S.D. Tex. 2021). During the stop, Felix ordered Barnes out of the vehicle. *Id*. The parties dispute whether the car began to accelerate before or after Felix "jumped onto the door sill of the vehicle."

---

[1] Fed. R. App. P. 29 Statement: No counsel for either party authored this brief in any part. No person or entity other than *Amicus* made a monetary contribution to its preparation or submission. All parties are unopposed to the filing of this brief.

*Id*. Felix then drew his service weapon and fired inside the vehicle "with 'no visibility' of where he was aiming." *Id*. at 467. Nearly a decade later, despite a unanimous Supreme Court victory, the grieving Barnes family is still no closer to justice.

"[N]o one will maintain that an officer can lawfully avoid all risk by simply shooting and asking questions later." *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 288 (5th Cir. 2015) (Higginbotham, J., concurring in part and dissenting in part). The panel's decision in this case stands in stark contrast to that proposition. The result: "A routine traffic stop has again ended in the death of an unarmed black man, and again we cloak a police officer with qualified immunity, shielding his liability." *Barnes v. Felix*, 91 F.4th 393, 398 (5th Cir. 2024) (Higginbotham, J., concurring). And yet again, a court has inserted itself between the victims of egregious misconduct and the body the Seventh Amendment assigns to adjudicate disputes between citizens and their government—the jury.

When this matter first came before this Court, Judge Higginbotham penned a scathing concurrence: "given the rapid sequence of events and Officer Felix's role in drawing his weapon and jumping on the running board, the totality of the circumstances merits finding that Officer Felix violated Barnes's Fourth Amendment right to be free from excessive force." *Id.* at 401. But on remand, the very same panel *sua sponte* granted summary judgment to the Defendants-

Appellees, finding "that no genuine dispute of material fact exists as to whether Felix used excessive force in an objectively unreasonable manner." *Barnes v. Felix*, 152 F.4th 669, 677 (5th Cir. 2025).

When the same judge can assess the very same set of facts in diametrically opposed ways in consecutive years, a genuine dispute of material fact exists. The Framers intended for juries—comprised of ordinary citizens—to settle such factual disputes, especially in suits between citizens and their government.

## ARGUMENT

### I.    JURIES ARE FUNDAMENTAL TO OUR CIVIL JUSTICE SYSTEM.

". . . American patriots ranging from our Founders to contemporary judges and statesmen have affirmed the importance of the jury to the structure of our republic." Hon. Jennifer W. Elrod, *Is the Jury Still Out?: A Case for the Continued Viability of the American Jury,* 44 TEX. TECH. L REV. 303, 308 (2012). John Adams reportedly called trial by jury "the heart and lungs of liberty."[2] Thomas Jefferson described the right to a civil jury trial as "the only anchor, ever yet imagined by man, by which a government can be held to the principles of its constitution." Letter from Thomas Jefferson to Thomas Paine (July 11, 1789) (punctuation modernized).[3]

---

[2] *Quoted in* Thomas J. Methvin, *Alabama—The Arbitration State*, 62 ALA. LAW. 48, 49 (2001).

[3] *Available at* https://tinyurl.com/st92n95a.

James Madison referred to this right as being "as essential to secur[ing] the liberty of the people as any one of the pre-existent rights of nature."[4]

These opinions were formed through colonial Americans' experience with harsh abuse. "Civil juries in particular have long served as a critical check on government power." *Jarkesy v. SEC*, 34 F.4th 446, 451 (5th Cir. 2022). As the Supreme Court recently recounted, "When the English began evading American juries by siphoning adjudications to juryless admiralty, vice admiralty, and chancery courts, Americans condemned Parliament for 'subvert[ing] the rights and liberties of the colonists.'" *SEC v. Jarkesy*, 603 U.S. 109, 121 (2024) (quoting Resolutions of the Stamp Act Congress, art. VIII (Oct. 19, 1765), *reprinted in* SOURCES OF OUR LIBERTIES 270, 271 (R. Perry & J. Cooper eds. 1959)). The Stamp Act Congress called trial by jury "the inherent and invaluable right of every British subject in these colonies." Declaration of Rights of the Stamp Act Congress of 1765, *reprinted in* 2 THE FOUNDERS' CONSTITUTION art. 1, § 7, cl. 1, doc. 3.[5] Shortly after this, in 1766, George Mason condemned the British for "depriving us of the ancient Tryal, by a Jury of our Equals, and substituting in its place an arbitrary Civil Law Court." Letter

---

[4] *Quoted in* Hon. Kathleen M. O'Malley, *Foreword: Trial by Jury: Why It Works and Why It Matters*, 68 AM. U. L. REV. 1095, 1098 (2019) (alteration in original) (citing Mark W. Bennett, *Judges' Views on Vanishing Civil Trials*, 88 JUDICATURE 306, 307 (2005) (quoting 1 ANNALS OF CONG. 454 (Joseph Gales ed., 1789))).

[5] Available at https://tinyurl.com/4zvfdk6v.

from George Mason to the Committee of Merchants in London (June 6, 1766).[6] The First Continental Congress demanded for Americans the "great and inestimable privilege of being tried by their peers of the vicinage." Declaration and Resolves of the First Continental Congress of 1774, *reprinted in* DOCUMENTS ILLUSTRATIVE OF THE FORMATION OF THE UNION OF THE AMERICAN STATES doc. no. 398 (Charles C. Tansill ed., 1927).[7] The Congress further protested denial by the British of the "accustomed and inestimable privilege of trial by jury, in cases affecting both life and property." Declaration of the Causes and Necessity of Taking Up Arms (July 6, 1775).[8] The Declaration of Independence accused King George of "depriving us in many cases, of the benefits of Trial by Jury." *Declaration of Independence: A Transcription*, NAT'L ARCHIVES.[9]

The members of the Founding Generation united in their demand for a civil jury trial guarantee. "One of the strongest objections originally taken against the constitution of the United States, was the want of an express provision securing the right of trial by jury in civil cases." *Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 446

---

[6] Available at https://tinyurl.com/ms2yw6pm.

[7] Available at https://tinyurl.com/yxzztyk5.

[8] Available at https://tinyurl.com/mr3a9sbb.

[9] Available at https://tinyurl.com/42eaj8n7.

(1830) (Story, J.).[10] George Mason and Elbridge Gerry noted this as a reason they would not sign the Constitution.[11] Anti-Federalist concern became so intense that Alexander Hamilton dedicated Federalist No. 83 to assuring readers that "[t]he friends and adversaries of the plan of the convention, if they agree in nothing else, concur at least in the value they set upon the trial by jury."[12]

Of course, the Framers responded with crucial reassurance of their own, enacting the Seventh Amendment. In doing so, they secured the civil jury trial right "against the passing demands of expediency or convenience." *Jarkesy*, 603 U.S. at 122 (citation omitted).

The Supreme Court has continued to recognize the importance of civil jury trials. Last year, the Justices affirmed a decision from this Court, explaining that the jury trial right is "of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right has always been and should be scrutinized with the utmost care." *Jarkesy*, 603 U.S. at 121 (citation and internal quotation marks omitted). The Supreme Court has also consistently recognized that

---

[10] *See also* Kenneth S. Klein, *The Validity of the Public Rights Doctrine in Light of the Historical Rationale of the Seventh Amendment*, 21 HASTINGS CONST. L.Q. 1013, 1018–19 (1994).

[11] Charles W. Wolfram, *The Constitutional History of the Seventh Amendment*, 57 MINN. L. REV. 639, 660 n.59 & 667 (1973).

[12] THE FEDERALIST No. 83 (Alexander Hamilton).

§ 1983 claims, as a "species of tort liability," are appropriate for a jury. *Heck v. Humphrey*, 512 U.S. 477, 483 (1994) (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305 (1986)); *see also City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999).

The Framers recognized "the right of trial by jury in civil cases [as] an important bulwark against tyranny and corruption, a safeguard too precious to be left to the whim of the sovereign, or . . . to that of the judiciary." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 343 (1979) (Rehnquist, J., dissenting). The Seventh Amendment was adopted to expose official government actions to the scrutiny of ordinary citizens and to ensure that ordinary people, not government officials, would be the final arbiters of questions of fact. This safeguard against oppression is central to the constitutional design of our justice system and to § 1983, through which Congress empowered jurors to hold government officials accountable when they violate people's rights.

## II.     THE REASONABLENESS OF FELIX'S USE OF FORCE IS A QUESTION OF FACT FOR A JURY.

"The controlling distinction between the power of the court and that of the jury is that the former is the power to determine the law and the latter to determine the facts." *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935). The ultimate determination regarding reasonableness, like that of any disputed question of fact, lies with the

jury. *See Tolan v. Cotton*, 572 U.S. 650, 660 (2014) (per curiam) (reversing this Court: "The witnesses on both sides come to this case with their own perceptions, recollections, and even potential biases. It is in part for that reason that genuine disputes are generally resolved by juries in our adversarial system.").

When the panel first heard this matter, Judge Higginbotham deemed it "plain that the use of lethal force against this unarmed man preceded any real threat to Officer Felix's safety." *Barnes*, 91 F.4th at 401 (Higginbotham, J., concurring). At the time, the panel was constrained by the exceedingly narrow "moment of threat" test. *Id*. But the Supreme Court rightly removed that distortion. However, rather than remand the case to the district court, the panel—of its own volition—found "based on the totality of the circumstances, that no genuine dispute of material fact exists as to whether Felix used excessive force in an objectively unreasonable manner at any time in the traffic stop." *Barnes*, 152 F.4th at 677.

Judge Higginbotham drew two irreconcilable conclusions from the very same set of facts. If a single federal appellate judge can see the same facts in two different ways, surely "reasonable minds could differ as to the import of the evidence," so there is "a sufficient disagreement to require submission to a jury"—surely the evidence is *not* "so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242*,* 251–52 (1986).

Specific doctrines governing disputes like the one here confirm this. This Court has held that "a suspect that is fleeing in a motor vehicle is not so inherently dangerous that an officer's use of deadly force is *per se* reasonable." *Lytle v. Bexar Cty.*, 560 F.3d 404, 416 (5th Cir. 2000). It has also denied summary judgment finding that "continuing to shoot" as a vehicle drove away "could support a finding that the force used was unreasonable." *Baker v. Coburn*, 68 F.4th 240, 250 (5th Cir. 2023). Similarly, this Court has denied summary judgment where a driver whose car was shot by police "did not drive erratically" and did not pose any danger to the officer or the public. *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004).

Courts should feel no "heartburn with the notion that [a] dispute can go to trial." *Spiller v. Harris County*, 113 F.4th 573, 582 (5th Cir. 2024) (Willett, J., concurring) (citation and internal quotation marks omitted). "There, in a solemn United States courtroom," the law "can be vindicated by a jury," rather than "three appellate judges playing junior-varsity jury." *Id.*

## CONCLUSION

The panel's decision stripped jurors of their constitutionally assigned role of deciding whether an officer's use of force is reasonable. It replaced the common-sense judgment of ordinary citizens with judicial fiat. Letting the decision stand will ensure that officers who use excessive force will never have their actions scrutinized

by a jury, as the Framers and Congress intended. This Court should vacate the panel's decision and remand the case to the district court.

Respectfully submitted,

/s/ Matthew P. Cavedon
Matthew P. Cavedon
    *Counsel of Record*
Michael Z. Fox
CATO INSTITUTE
1000 Mass. Ave., N.W.
Washington, DC 20002
706-309-2859
mcavedon@cato.org

Dated: November 10, 2025

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and Fed. R. App. P. 32(a)(7)(B) because it contains 2,161 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in Times New Roman, 14-point font.

/s/ Matthew P. Cavedon

November 10, 2025

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court, who will enter it into the CM/ECF system, which will send a notification of such filing to the appropriate counsel.

/s/ Matthew P. Cavedon

November 10, 2025